## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **KEVIN LIPMAN** as Administrator<br>of the Estate of Ta'Naejah McCloud,<br>Deceased<br>**SHABRINA McCLOUD,**<br><br>                Plaintiffs,<br><br>    **-vs-**<br><br>**ARMOND BUDISH, in his official capacity**<br>**as County Executive Cuyahoga County,**<br>**CUYAHOGA COUNTY CHILDREN AND**<br>**FAMILY SERVICES, TEQUILA CRUMP,**<br>**URSULA OWENS, KRISTINA QUINT,**<br>**ADA JACKSON, MARQUETESE BETTS,**<br>**JOHN/JANE DOE I-VII individually and or**<br>**Agents of Cuyahoga County,**<br><br>                Defendants. | Civil Action No:<br><br><br><br><br><br><br><br>JUDGE_____<br><br><br><br>ELECTRONICALLY FILED<br><br><br>Jury Trial Demanded |

## COMPLAINT AT LAW
## CIVIL RIGHTS/1983 ACTION and ANCILLARY STATE CLAIMS

Now come the Plaintiffs, KEVIN LIPMAN, as Administrator for the Estate of Ta'Naejah McCloud, SHABRINA MCCLOUD, by and through their attorneys, THE DERATANY FIRM and OBRAL, SILK & ASSOCIATES, LLC, and for their Complaint against the defendants allege and state as follows:

### JURISDICTION AND VENUE

1.  This action is brought to recover damages, compensatory, punitive, and exemplary in nature and to obtain other appropriate relief pursuant to 42 U.S.C.§1983, and in violation of Due process Clause, both procedurally and substantively of the United States Constitution and laws of the State of Ohio.

2.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331, 1343 and 1367.

3.  Plaintiff Kevin Lipman resides in the Northern District of Ohio.

4.    The matters described herein occurred in the Northern District of Ohio. Therefore, venue for this action lies in the Northern District of Ohio pursuant to 28 U.S.C.§1391.

## PARTIES

5.    The Plaintiff Shabrina McCloud, is an adult citizen of the United States residing in Lynchburg, VA and was in loco parentis mother of Ta'Naejah McCloud.

6.    The Plaintiff Kevin Lipman an adult citizen of the United States residing in Cuyahoga County, Ohio was appointed on September 24, 2018 as administrator of the Estate of Ta'Naejah McCloud, (order of appointment attached hereto as exhibit "A" to this complaint).

7.    The Defendants Ada Jackson, Kristina Quint, Marquetese Betts, John/Jane Doe I-VII are adult citizens of the United States.  At all times herein complaints of physical abuse toward Ta'Naejah were made to John/Jane Doe I-VII but they refused to investigate or report the abuse to the appropriate investigatory agencies.  At the time of these pleadings John/Jane Doe I-VII is unknown to plaintiff and plaintiff could not discover the names as the names are in the custody and control of the defendants.  At all times described herein, defendants were social workers/employees employed by Cuyahoga County and/or  Cuyahoga County Children Family Services operating in the course and scope of their employment. Ada Jackson, Kristina Quint, Marquetese Betts, John/Jane Doe are being sued individually for the conduct in the scope of their employment with Cuyahoga County and/or Cuyahoga County Children Family Services.

8.    Defendant Armond Budish, is the County Executive for Cuyahoga County, a local governmental agency, political subdivision in and for State of Ohio located at 2079 East Ninth Street Cleveland, OH 44115 and oversees Cuyahoga County Children Family Services.

9.    The Defendant Cuyahoga County Children Family Services is a political

subdivision in and for Cuyahoga County, State of Ohio, (hereinafter "CCDCFS") located at 3955 Euclid Avenue Cleveland, OH. CCDCFS is a child protection agency charged with providing social services to children in order to promote a child's right to safety and stability, as well as ensuring freedom from abuse and neglect.

10.     The Defendant Tequila Crump (sometimes hereinafter referred to as "Crump") is an adult citizen of the United States, natural mother of Ta'Naejah McCloud who, at all times relevant, resided in Cuyahoga County and who was convicted in the death of Ta'Naejah McCloud, more specifically convicted of multiple counts of Reckless Homicide, multiple counts of Endangering Children, and was sentenced to serve time in the Ohio State Prison System.

11.     The Defendant Ursula Owens, (sometimes hereinafter referred to as "Owens") an adult citizen of the United States, who at all times relevant herein, resided in Cuyahoga County and who was convicted in the death of Ta'Naejah McCloud, more specifically convicted of Murder, multiple counts of Reckless Homicide, Felonious Assault and multiple Counts of Endangering Children and was sentenced to serve time in the Ohio State Prison System.

## STATEMENT OF FACTS

12.     Decedent Ta'Naejah McCloud was a 5 year old child, born September 2, 2011, to Tequila Crump, biological mother and unknown father.

13.     Ta'Naejah had suffered from a developmental disability.

14.     At the time of her birth, Ta'Naejah lived in Lynchburg, VA, with her biological mother, Tequila Crump, and plaintiff, Shabrina McCloud, who was issued legal custodial rights of Ta'Naejah by the State of Virginia.

15.     At or around 2016, Shabrina McCloud separated from Tequila Crump.

16.     Shabrina named Ta'Naejah and Ta'Naejah carried her last name.

17.     At or about June 2016, defendant, Tequila Crump moved in with defendant Ursula Owens in Cleveland, OH.

18.     On or about October 2016, and continuing to her death, Tequila Crump and Ursula Owens began to inflict severe and repeated abuse against Ta'Naejah.

19.     Between September 2016 through March 2017, the above stated CCDCFS social workers and/or Cuyahoga County employees were contacted by neighbors and/or medical providers to report suspected abuse and neglect related to Ta'Naejah on numerous occasions. Cuyahoga County employees failed to report the suspected abuse and CCDCFS refused to appropriately investigate the abuse allegations as to Ta'Naejah.

20.     On or about September 2016, a Cuyahoga County employee knew Crump and Owens were burning Ta'Naejah but failed to report this abuse as mandated by Ohio Rev. Code 2151.421.

21.     On or about October 2016, a citizen reported to CCDCFS social worker that Crump and Owens were burning Ta'Naejah. CCDCFS through its social worker, deliberately refused to investigate the claim as mandated by Ohio Rev. Code §5153.16(a)(1) and 2151.4219G)

22.     On or about early October 2016, it was reported to CCDCFS that Ta'Naejah was being beaten and punched in her face by defendants, Crump and her girlfriend Owens.  CCDCFS refused to properly investigate these allegations of abuse and neglect as mandated by Ohio Rev. Code §5153.16(a)(1) and 2151.4219G)

23.     On or about October 17, 2016, Ta'Naejah was taken to University Hospitals Rainbow Babies and Children's Hospital ("RBC") with Third Degree burns. The hospital social worker reported to the CCDCFS social worker that these burns were not self - inflicted as reported by Crump and Owens, but in fact, were the result of abuse, and the CCDCFS refused to

investigate these allegations of abuse and neglect as mandated by Ohio Rev. Code §5153.16(a)(1) and 2151.4219G)

24.     On or about October 18, 2016, Ta'Naejah was transferred to Metro Health Medical Center Burn Intensive Care Unit; she was admitted with third degree burns on the back of her hands, arms and all of her fingers. The hospital social worker reported the abuse to CCDCFS specifically indicating that the burns may not have been self-inflicted.

25.     During the October 2016, hospitalization at Metro Health Medical Center, she remained in the joint custody of the hospital and CCDCFS. Ta'Naejah was in the custody of CCDCFS upon reporting of the Third Degree Burns to CCDCFS by "RBC" and Metro Health Medical Center.

26.     During the October 2016 hospitalization, Ta'Naejah was required to undergo painful grafting surgery as a result of the third degree burns.  The surgery was performed by Dr. Yowler.  Dr. Yowler reported to the Metro Health Medical Center social worker that the burns were not self- inflicted.  This  information was reported to CCDCFS social worker Kristina Quint.

27.     During the October 2016 hospitalization, a Metro Health Medical Center nurse suspected Ta'Naejah suffered physical abuse by her mother and reported this to CCDCFS worker Kristina Quint.

28.     During the October 2016 hospitalization, Kristina Quint interviewed Ta'Naejah about the abuse in the presence of the mother and Ursula Owens, both who were accused of committing the abuse. Ta'Naejah stated to Kristina Quint she went to the bathroom with her mom and she was scared of the hot water.   Kristina Quint was required by standards of care and CCDCFS policy number 2.03.00, to interview Ta'Naejah alone under these circumstances.

29.     CCDCFS caseworker Kristina Quint's decision to interview Ta'Naejah in the

presence of the alleged abusers, placed the child in grave danger, substantially increasing the risk of further injury and placed the child in a worse position than if the state worker had not of acted at all. This act emboldened Crump and Owens to inflict worse physical abuse on Ta'Naejah.

30.     During the October 2016 hospitalization, Metro Health Medical Center Nursing staff reported to CCDCFS worker Kristina Quint that Ta'Naejah said she was scared of the hot water and went to the bathroom with her mom, which contradicted the statements of the mother, Crump.

31.     During the October 2016 hospitalization, Metro Health Medical Center pediatric social worker Kathy Mahoney called CCDCFS several times throughout the admission of Ta'Naejah and reported to CCDCFS worker Kristina Quint that the burn injuries were suspicious injuries and were not self-inflicted.

32.     During Ta'Naejah's admission to RBC/Metro Health Medical Center and while in the custody of CCDCFS it was reported to CCDCFS that Ta'Naejah was not enrolled in school, which is by standard of care, considered notice of abuse.

33.     Metro Health Medical Center Social worker Kathryn Mahoney stated she is a mandatory reporter and must report suspicions and allegations of abuse to CCDCFS. Once Mahoney reported the suspected abuse to CCDCFS, then custody of Ta'Naejah is fully transferred to CCDCFS and the decision to discharge a child from the hospital to her parents is determined solely by CCDCFS.

34.     During the October 2016 hospitalization, Metro Health Medical Center pediatric social worker Kathy Mahoney stated that once a report is made to child services a child can not be discharged from the hospital until CCDCFS acts affirmatively to discharge the child.

35.     Metro Health Medical Center Pediatric social worker Kathy Mahoney indicated

only CCDCFS can act to discharge a child either to the parent or to foster care because CCDCFS had temporary custody of the child.

36.     Ta'Naejah was not free to leave the hospital until CCDCFS acted.

37.     On or about October 21, 2016, CCDCFS social worker Kristina Quint actively discharged Ta'Naejah from the hospital, into the custody of Tequila and Ursula without affording Ta'Naejah due process.

38.     On or about October 17, 2016 and continuing thereafter, Kristina Quint ignored professional opinions from the doctors, nurses and social workers indicating that the injuries sustained by Ta'Naejah were not self-inflicted, and ignored Ohio statutes by deciding to and acting to discharge Ta'Naejah without appropriate, investigation, written reports, review and oversite from her superiors and public agencies.

39.     Kristina Quint misused her authority by actively discharging  Ta'Naejah into the custody of her mother Tequila Crump and Ursula Owens without completing a proper investigation in violation of Ohio Rev. Code §5153.16(a)(1) and 2151.4219G)

40.     Through the hospital stay and while in the custody of CCDCFS, despite repeated requests from hospital staff, Kristina Quint refused to investigate the issue with hot water, go to the house and interview the other people who lived in the home, or interview the landlord in violation of Ohio Rev. Code §5153.16(a)(1) and 2151.4219G)

41.     The assessment/investigation, was not timely managed and was recklessly investigated and closed by Cuyahoga County CCDCFS in violation of O.A.C. Sec 5101:2-36-01/03.  CCDCFS refused to generate a written report of the abuse and forward the report to the appropriate agencies which would have ensured that Ta'Naejah would not be placed with Crump and Owens.

42.     After CCDCFS discharged Ta'Naejah from the hospital in October 2016 into the custody of Crump and Owens and continuing through March 2017, multiple complaints of neglect and/or physical abuse were made to CCDCFS and none of those reports were investigated.

43.     In February, 2017 a county social worker reported to CCDCFS that Ta'Naejah was being physically abused.  Another case was opened with CCDCFS and Ada Jackson was responsible for investigating the report. CCDCFS refused to investigate this report which would have led to the removal of Ta'Naejah from Crump and Owens.

44.     In February 2017 and continuing to her death on March 21, 2017, CCDCFS took co-custody of Ta'Naejah.  During this time the CCDCFS caseworker would take her to medical appointments, which included getting an examination to assess potential abuse.  The physician concluded Ta'Naejah was malnourished.  CCDCFS supervisor Marquetese Betts determined that the risk level for Ta'Naejah was high, took co-custody of Ta'Naejah and kept her case open.

45.     On or about February 7, 2017 while in the custody of CCDCFS, CCDCFS took Ta'Naejah to be examined by a physician.  CCDCFS caseworker, Ada Jackson was present and left the room where Ta'Naejah was being examined. Ta'Naejah had multiple scars on her body and she had only gained one pound since October, 2016.  After discovering the child was malnourished and had multiple scars, CCDCFS caseworkers gave physical custody of Ta'Naejah to Defendants Crump and Owens, who continued to abuse the child.

46.     From February 7, 2017, through March 17, 2017, while in the co-custody of CCDCFS a number of complaints were made to CCDCFS concerning allegations of physical abuse. CCDCFS was aware of these reports and yet continued each time to place and return

Ta'Naejah with Crump and Owens.

47.     Between February 2017 and March 2017 while in the co-custody of CCDCFS, CCDCFS received multiple complaints of physical abuse of Ta'Naejah and went to the home on five different occasions.  On each of those occasions CCDCFS social workers interviewed Ta'Naejah in front of Crump and Owens, in violation of the standard of care, OAC 5101:2-36-03 and CCDCFS policy 2.03.00, and placed Ta'Naejah at greater risk of physical abuse than if they had not acted at all.

48.     Between February 2017 and March 17, 2017 Ada Jackson discovered that Ta'Naejah was sleeping on the floor with no pillow and no blanket and had no bed during the time period.

49.     During February, 2017 through March, 2017, CCDCFS was aware that Ta'Naejah was in  a home infested with bed bugs and cockroaches.  It was reported to CCDCFS that Ta'Naejah was eating cockroach-filled sandwiches, and yet CCDCFS continued to return the child to the home of Owens and Crump.

50.     On March 16, 2017, the day before the brutal physical abuse of Ta'Naejah that resulted in her death, Defendants Crump and Owens made Ta'Naejah scrub the floor with a rag soaked in bleach.  Ta'Naejah was consumed by the aroma of the bleach, and became unconscious for several hours. During this incident CCDCFS had co-custody and an open case on Ta'Naejah, and knew or should have known of the abuse.

51.     On or after February 7, 2017, and prior to the death of Ta'Naejah, Defendant Crump reported to CCDCFS that she was suffering from mental health issues and needed help. CCDCFS, having knowledge of current and prior physical abuse of Ta'Naejah by Crump, created a greater risk of physical abuse and death for Ta'Naejah by continuing to return physical

custody of Ta'Naejah to Owens and Crump, knowing Crump was exhibiting psychological issues and was unstable.

52.     From September, 2016 through March, 2017, Defendant Owens repeatedly punched and violently pushed Ta'Naejah to the ground. Owens would use her hands, fists, belts, and other objects to strike Ta'Naejah.  These acts were witnessed by neighbors, family members, and other individuals living in the home. These events were reported to CCDCFS and CCDCFS refused to investigate these reports and continued to physically place the child with Owens and Crump.

53.     Between February, 2017 and March, 2017, prior to her death, Ta'Naejah suffered a fractured clavicle and multiple rib fractures while in the co-custody of CCDCFS.

54.     On March 17, 2017, at approximately 10:00 A.M., while in the care and co-custody of CCDCFS, Defendant Crump repeatedly struck Ta'Naejah and stood by and watched Defendant Owens throw Ta'Naejah against the wall, the dresser and floor.

55.     On March 17, 2017, while in the co-custody, care and being monitored by CCDCFS, at approximately 10:00 A.M. Ursula Owens began yelling at Ta'Naejah, hit her multiple times, picked her up and threw her against the wall, threw her against the dresser, threw her to the ground, stepped on her and repeatedly hit Ta'Naejah.

56.     For approximately 10 hours on March 17, 2017, Ta'Naejah became unresponsive at the home of Defendants Crump and Owens, yet they refused to call for medical assistance.

57.     At approximately 10:00 P.M. on March 17, 2017, Ta'Naejah was rushed to the emergency room, where she was examined, tested and determined to have bleeding on her brain. Ta'Naejah succumbed to her injuries and died on March 19, 2017. An autopsy performed on March 20, 2017 concluded that the cause of death of Ta'Naejah McCloud was, "multiple blunt

force injuries" and the manner of death was homicide.

58.　　Crump was arrested and charged, and convicted by a jury of reckless homicide and endangering children, as a result of the events which led to the death of Ta'Naejah McCloud. Ursula Owens was convicted by a jury of murder, reckless homicide, endangering children and felonious assault as a result of the events which led to the death of Ta'Naejah McCloud.

59.　　Ada Jackson, Marquetese Betts, Kristina Quint and John/Jane Does I-VII were the individuals responsible for investigating suspicions of child abuse and neglect and protecting children who are at serious risk, and whose actions in placing or returning the child to Crump and Owens was reckless and indifferent to the known and obvious risks facing Ta'Naejah, and put the child in a worst position than had they not have acted at all.

60.　　From October 2016 through March 2017, the condition and health of Ta'Naejah, including her physical appearance and assessments, continued to decline such that a reasonable person in a similar position should have suspected physical abuse and neglect was occurring and would have occurred as a result of the actions of the defendants.

61.　　At all times material hereto each of the Cuyahoga County Defendants, individually and collectively, while acting under color of state law, acted in a manner inconsistent with professionally accepted minimum standards when they interviewed a child victim of physical abuse on multiple occasions while the perpetrators of the abuse were present, when they repeatedly transferred custody of Ta'Naejah to the perpetrators of the abuse, when they failed to protect Ta'Naejah while in their custody and control, when they misused their authority by not fully investigating and assessing the danger created by discharging Ta'Naejah to Crump and Owens and created the danger which eventually led to the injuries, damages and eventual death of Ta'Naejah.

62.     As a result of such reckless and deliberately indifferent conduct on the part of the Cuyahoga County Defendants in their individual and/or official capacities, these   Defendants did create and place Ta'Naejah in danger and subjected her to serious harm, injury and death, which would not have existed had they not have acted at all.

63.     Said misconduct of each individually named Defendant is outrageous and demonstrates reckless and callous disregard of and indifference to the rights and safety of Plaintiffs and  are a result of evil motive and intent so as to support an award of punitive damages.

64.     At all times material hereto, Cuyahoga County and/or CCDCFS knew or should have known that Defendant Owens had previous cases of physical abuse and neglect which were substantiated and resulted in the removal of her biological son by CCDCFS.

### COUNT I – CIVIL RIGHTS/§1983 ACTION

65.     Plaintiff KEVIN LIPMAN as administrator of the Estate of TA'NAEJAH MCCLOUD,   restate and incorporate by reference, Paragraphs 1 through 64 of this Complaint as if fully re-written herein.

66.     At all times material to the facts set forth in this Complaint the individual Defendants Armond Budish acting in his official capacity for Cuyahoga County, Cuyahoga County Children Family Services, Defendants Kristina Quint, Marquetese Betts, Ada Jackson, and John/Jane Doe I-VII were acting in their individual or official capacities as employees of Cuyahoga County and/or Cuyahoga County Children Family Services and were acting under color of state law.

67.     At all times material to the facts set forth in this Complaint the individual

Defendants Armond Budish acing in his official capacity for Cuyahoga county, Cuyahoga County Children Family Services, Defendants Kristina Quint, Marquetese Betts, Ada Jackson, John/Jane Doe I-VII were acting in their individual or official capacities as employees of Cuyahoga County and/or Cuyahoga County Children Family Services engaged in conduct that rendered Ta'Naejah more vulnerable to foreseeable physical abuse and death perpetrated by Crump and Owens.

68.     At all times material to the facts set forth in this Complaint Ta'Naejah was in the custody and/or co-custody of Cuyahoga County and/or Cuyahoga County Children Family Services.

69.     At all times material to the facts set forth in this Complaint CCDCFS and the individually named defendants created a condition of danger, which would have not existed had they not have taken the actions as set forth above.

70.     The actions of Defendants as set forth above, violated the substantive due process rights of the Plaintiffs as protected by the Fourteenth Amendment of the United States Constitution, the procedural due process rights of Plaintiffs as protected by the Fourteenth Amendment of the United States Constitution and caused the injuries to Plaintiffs as set forth in Paragraphs 67, above.

71.     Said misconduct of each individually named Defendant is outrageous and demonstrates reckless and callous disregard of and indifference to the rights and safety of Ta'Naejah and are a result of reckless motive and intent, so as to support an award of punitive damages and attorney's fees.

As a direct and proximate result of the foregoing outrageous, intentional, reckless and negligent conduct and conduct in violation of the United States Constitution,14[th] Amendment due process clause both procedurally and substantively by the Defendants, Ta'Naejah sustained

the following injuries and damages, some or all of which caused her death:

      a.      sustained third degree burns on the back of her hands and fingers requiring grafting surgery;

      b.      sustained repeated punches in the face, head and body along with other physical abuse between October 2016 through March 2017 resulting in multiple rib fractures, fractured clavicle, multiple lacerations and scarring;

      c.      sustained serious brain damage as a direct result of being repeatedly thrown against the wall, stomped, kicked in the head, and thrown against the dresser;

      d.      while suffering from a brain bleed was left for 10 hours without medical attention;

      e.      between October 2016 through February 2017 was deprived of necessary food and nutrition, resulting in malnourishment;

      f.      sustained severe psychological trauma of a longstanding or permanent nature;

      g.      sustained severe permanent brain damage resulting in hospitalization and eventual death; and

      h.      was induced to inhale toxins from bleach resulting in unconsciousness for a period of three hours or greater as a form of punishment without medical care.

WHEREFORE Plaintiff Kevin Lipman as administrator for the Estate of Ta'Naejah

McCloud, demands judgment in his favor and against Defendants, ARMOND BUDISH County

Executive for Cuyahoga County, CUYAHOGA COUNTY CHILDREN AND FAILY

SERVICES, KRISTINA QUINT, ADA JACKSON, MARQUETESE BETTS, JOHN/JANE

DOE I-VII as follows:

      i.      Enter judgment in favor of plaintiffs and against defendants, jointly and individually, for damages incurred by plaintiffs as a result of defendants' unlawful conduct, together with interest;

      ii.      Enter judgment in favor of plaintiffs and against defendants, jointly and individually, for compensatory damages, including, but not limited to damages for mental anguish,  and other damages to be determined at trial, together with interest;

      iii.      Enter judgment in favor of plaintiffs and against defendants, jointly and individually, for punitive damages;

      iv.      Award plaintiffs their costs of this action, including expert witness fees and a reasonable attorneys' fee; and,

      v.      Award such other and further legal and equitable relief as may be appropriate to redress  fully the deprivation of plaintiff's civil rights, to prevent such recurrences in the future and to protect others from

defendants' further unlawful behavior.

**COUNT II — WRONGFUL DEATH –**
**-RECKLESS,WILLFUL, AND WANTON-, KRISTINA QUINT, ADA JACKSON,**
**MARQUETESE BETTS, JOHN/JANE DOES I-VII**

72.     Plaintiffs, SHABRINA MCCLOUD and KEVIN LIPMAN as administrator of the Estate of TA'NAEJAH MCCLOUD, restate and incorporate by reference, Paragraphs 1 through 64 of this Complaint as if fully re-written herein.

73.     At all times relevant, and pursuant to O.A.C. 5101:2-36-01, 5101:2-36-03, O.R.C. 2151.421, Kristina Quint, Ada Jackson, Marquetese Bett, John/Jane Does I-VII as employees of Cuyahoga County and/or CCDCFS was required to comply with regulations, in providing social services and investigating child, neglect and abuse to children under the age of 18 years who had suffered or faced the threat of suffering injury, disability or a condition of a nature that reasonably indicated abuse or neglect and failed to do so.

74.     On or about September 2016, and continuing to her death these Defendants owed a duty  to Ta'Naejah pursuant to Ohio Revised Code and regulations requiring social workers to provide care and services to Ta'Naejah.

75.     At all times from September, 2016, up through March 17, 2017, Defendants had a common law duty, as well as a statutory duty and a duty pursuant to its voluntary undertaking, to protect the health, safety and best interests of Ta'Naejah in all situations in which she was vulnerable to child abuse or neglect, offer protective services in order to prevent any further harm to Ta'Naejah and to provide recommendations and services which will stabilize the home environment and preserve the life of the child.

76.     Defendants Kristina Quint, Ada Jackson, Marquetese Betts, John/Jane Does I-VII breached its duty of care that was owed to Ta'Naejah by one or more of the following acts:

a)      From October 2016 through February 2017 failed to monitor the safety of Ta'Naejah by  failing to recommend and provide the necessary services to Tequila Crump, and Ta'Naejah including safety assessments, medical treatment, in violation of OAC 5101:2-36-03, ORC 2151.421 and other applicable statutory regulations;

b.      Repeatedly and actively interviewed the child in front of the abusive parent, which put the  child in an unsafe and dangerous condition;

c.      From September 2016 through March 2017, ignored and refused  to investigate reports of abuse and neglect, failed to investigate within 24 hours reports of abuse and neglect, failed to record reported abuse and neglect complaints as statutorily mandated, failed to inform and work with law enforcement agencies to assist in the investigation of reported abuse and neglect complaints, failed to gather the requisite information in accordance with OAC 5101:2-36, ORC 2151.421 and other applicable statutory regulations, failed to file a report of its investigation, failed to properly investigate reported cases of abuse and neglect;

d.      From February, 2017 through March 17, 2017, refused to monitor the home of Ta'Naejah, failed to provide necessary living essentials to Ta'Naejah i.e., food, bed, failed to remove Ta'Naejah from a cock roach and bed bug infested home, failed to remove Ta'Naejah from an unsafe and unsanitary living situation;

e.      From February 2017 through March 17, 2017 refused to assess the mental health of Tequila Crump after learning that Tequila had mental health issues and refused to remove Ta'Naejah from the home;

f.      From September 2016 through March 17, 2017 refused to assess the mental health  and failed to evaluate the risk and assess whether Ursula was a safety concern for Ta'Naejah despite previous allegations of abuse directed toward her biological son, abuse known to the defendants that resulted in the removal of the child from the home;

g.      Repeatedly closed cases of reported abuse and neglect without proper and thorough assessment and investigation;

h.      In October 2016, closed the file, and released Ta'Naejah to the custody of her mother despite information by doctors, nurses, hospital social workers that Ta'Naejah had suffered burn injuries that were not self-inflicted, and failed to conduct a child safety assessment as  required by the statute; failed to act to remove Ta'Naejah from the home;

i.      After October 2016, refused to implement an aftercare plan, as required by statutory regulations;

j.      From September 2016 through March 2017 disregarded warnings and pleas from family, friends, neighbors, doctors, nurses, social workers of Ta'Naejah regarding the child's safety and wellbeing despite repeated reports of abuse and neglect;

k.      In October 2016 and February 2017, refused to recommend immediate transfer of Ta'Naejah to temporary protective custody when they knew or should have known that she had been neglected, or physically abused and beaten; and

l.      Released Ta'Naejah back to the custody of her mother despite that they knew or should have known Ta'Naejah was the victim of child abuse, that the mother had a propensity of violence, that the live in girlfriend had a propensity for violence and knew or should have known that said child abuse was likely to continue and result in serious bodily harm and/or death to Ta'Naejah;

77.     As a direct and proximate result of one or more of the aforesaid acts or omissions, Ta'Naejah McCloud, sustained injuries resulting in her death on March 19, 2017 and suffered a wrongful death.

78.     SHABRINA MCCLOUD in loco parentis Mother and  KEVIIN LIPMAN as administrator of the Estate of Ta'Naejah McCloud bring this wrongful death action, pursuant to O.R.C. §2125.02.

79.     That on or about March 19, 2017, Ta'Naejah McCloud left surviving her:

SHABRINA MCCLOUD      In Loco Parentis Mother

BONITA D. RAY      Biological Maternal Grandmother

WILLIE J. CRUMP      Biological Maternal Grandfather

80.     Each of the above named employees were acting within the scope of their employment and thereby Cuyahoga County and/or Cuyahoga County Child Family Services have a  duty to indemnify each of the above named employees in accordance with O.R.C. 2744.07 (A) (1) (2) for any judgement relating to injury, death or loss of property, other than a

judgement for punitive or exemplary damages that is obtained against the employee.

All the above have suffered pecuniary loss, including grief and sorrow and loss of society as a result of Ta'Naejah's death.

WHEREFORE, Plaintiffs prays for judgment against each Defendant, jointly and severally, in an amount significantly in excess of $75,000 in compensatory damages on each cause of action in this complaint, punitive damages where permissible and appropriate in an amount significantly in excess of $75,000, as well as other appropriate relief, including attorney's fees and litigation expenses, the costs of this action, pre and post judgment interest, and any other legal, equitable, injunctive or declaratory relief that may be just and appropriate.

## COUNT THREE — WRONGFUL DEATH – -RECKLESS,WILLFUL, AND WANTON- TEQUILA CRUMP, URSULA OWENS

81.     Plaintiffs, SHABRINA MCCLOUD and KEVIN LIPMAN, restate and incorporate by reference, Paragraphs 1 through 64 of this Complaint as if fully re-written herein.

82.     This cause of action is brought against defendants, Tequila Crump and Ursula Owens, who were each duty-bound to care for Ta'Naejah.

83.     Each of these caretakers were reckless, willful and wanton, abandoning entirely their duties to care for and protect Ta'Naejah and instead neglected, physically abused and caused her death.

84.     As a direct and proximate result of the caretaker's reckless, willful and wanton acts, Ta'Naejah suffered harms, losses and a wrongful death.

85.     Each of the caretakers exhibited a conscious disregard for the rights and safety of Ta'Naejah despite a great probability that substantial harm and death would result from such failure.  Such reckless conduct gives rise to the imposition of punitive damages.

86. As a direct and proximate result of one or more of the aforesaid acts or omissions, Ta'Naejah McCloud, sustained injuries resulting in her death on March 19, 2017 and suffered a wrongful death.

87. Plaintiffs SHABRINA MCCLOUD in loco parentis mother and KEVIN LIPMAN as administrator of the Estate of Ta'Naejah McCloud bring this wrongful death action, pursuant to O.R.C. §2125.02.

88. That on or about March 19, 2017, Ta'Naejah McCloud left surviving her:

SHABRINA MCCLOUD          In Loco Parentis Mother

BONITA D. RAY            Biological Maternal Grandmother

WILLIE J. CRUMP          Biological Maternal Grandfather

All the above have suffered pecuniary loss, including grief and sorrow and loss of society as a result of Ta'Naejah's death.

WHEREFORE, Plaintiffs prays for judgment against each Defendant, jointly and severally, in an amount significantly in excess of $75,000 in compensatory damages on each cause of action in this complaint, an amount significantly in excess of $75,000 as and for punitive damages, as well as such other appropriate relief, including attorney's fees and litigation expenses, the costs of this action, pre and post judgment interest, and any other legal, equitable, injunctive or declaratory relief that may be just and appropriate.

### COUNT IV— SURVIVAL ACTION OF ALL COUNTS -- CUYAHOGA COUNTY, CUYAHOGA COUNTY CHILDREN FAMILY SERVICES, KRISTINA QUINT, ADA JACKSON, MARGUETESE BETTS, JOHN/JANE DOES I-VII, TEQUILA CRUMP, URSULA OWENS

89. Plaintiff KEVIN LIPPMAN as administrator of the Estate of Ta'Naejah McCloud restates and incorporates by reference, Paragraphs 1 through 64 of this Complaint as fully re-

written herein.

90.     Prior to her death, Decedent Ta'Naejah McCloud endured great pain and suffering as a direct and proximate result of Defendants' willful, wanton, negligent acts and pursuant to the Ohio Survival Act, O.R.C 2305.21, this cause of action, by reason of such pain and suffering has survived her death.

WHEREFORE, Plaintiff KEVIN LIPPMAN as Administrator of the Estate of Ta'Naejah McCloud, *deceased,* prays for judgment against each Defendants, jointly and severally, in an amount in excess of $75,000 in compensatory damages on each cause of action in this complaint, as well as other appropriate relief, including attorney's fees and litigation expenses, the costs of this action, pre and post judgment interest, and any other legal, equitable, injunctive or declaratory relief that may be just and appropriate.

## COUNT V — STATUTORY FAILURE TO REPORT
## CUYAHOGA COUNTY, JOHN/JANE DOE I-VII

91.     Plaintiffs KEVIN LIPMAN and SHABRINA MCCLOUD, restates and incorporates by reference, Paragraphs 1 through 64 of this Complaint at Law herein.

92.     This cause of action is brought against John/Jane Does I-VII. It is also brought under the doctrine of respondeat superior against Cuyahoga County (for one or more of its agents or employees, including John/Jane Does I-VII).  This cause of action is for compensatory damages on behalf of Ta'Naejah, pursuant to O.R.C. §2151.421 (M).  Liability under the  statue satisfies the exception to a political subdivisions immunity set forth in O.R.C.§2744.02 (B) (5)

93.     Under O.R.C. §2151.421(A)(1)(a), no one who is acting in an official or professional capacity and knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect, that a minor child has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that

reasonably indicates abuse or neglect of the child shall fail to immediately report that knowledge or reasonable cause to suspect to the appropriate authority.

94. On information and belief under O.R.C. §2151.421 (A)(1)(b), John/Jane Doe I-VII were employees of a county department of job and family services who worked with children and families, or an employee of a county board of developmental disabilities, or a person engaged in social work all of which were under a duty to mandatory report as outlined by statute.

95. Each of the mandatory reporters failed to immediately report their knowledge of reasonable cause to suspect that Ta'Naejah suffered, or faced the threat of suffering from neglect abuse or injury. More, specifically they were told and had knowledge of Ta'Naejah being burned prior to October 2016.

96. As a direct and proximate result of the mandatory reporters' failure to report, Ta'Naejah suffered harms and losses and a wrongful death.

97. In failing to report, each of the mandatory reporters exhibited a conscious disregard for the rights and safety of Ta'Naejah despite a great probability that substantial harm would result from such failure. Accordingly, the imposition of compensatory damages including attorney fees is warranted.

WHEREFORE, Plaintiffs prays for judgment against each Defendant, jointly and severally, in an amount significantly in excess of $75,000 in compensatory damages on each cause of action in this complaint, as well as other appropriate relief, including attorney's fees and litigation expenses, the costs of this action, pre and post judgment interest, and any other legal, equitable, injunctive or declaratory relief that may be just and appropriate.

Respectfully submitted,

*/s/ Roosevelt Allen III*

_____

**Roosevelt Allen III (IL6298925)**
**The Deratany Law Firm**
221 N. LaSalle Street
Suite 2200
Chicago, Illinois 60601
312-857-7285
312-857-2004 (Fax)
Email: allen@lawinjury.com

-and-

**Thomas J. Silk (0021462)**
**Obral, Silk & Associates, LLC**
Local Co-Counsel for Plaintiffs
55 Public Square – Suite 1700
Cleveland, Ohio 44113
Tele:  216-*LAWYERS*
          (529-9377)
Fax:   216-696-3228
Email: Tsilk@216Lawyers.com

## JURY DEMAND

Plaintiffs respectfully request a Trial By Jury on all issues so triable.

Respectfully submitted,

*/s/ Roosevelt Allen III*

_____

**Roosevelt Allen (IL6298925)**
**The Deratany Law Firm**
221 N. LaSalle Street
Suite 2200
Chicago, Illinois 60601
312-857-7285
312-857-2004 (Fax)
Email: allen@lawinjury.com

-and-

**Thomas J. Silk (0021462)**
**Obral, Silk & Associates, LLC**
Local Co-Counsel for Plaintiffs
55 Public Square – Suite 1700
Cleveland, Ohio 44113
Tele:  216-*LAWYERS*
             (529-9377)
Fax:    216-696-3228
Email: Tsilk@216Lawyers.com