| | | |
|---|---|---|
| Kevin Lipman, et al., | ) | CASE NO. 1:18 CV 2985 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Armond Budish, et al. , | ) | <u>Memorandum of Opinion and Order</u> |
| | ) | |
| Defendant. | ) | |

### <u>Introduction</u>

This matter is before the Court upon the County defendants' Motion to Dismiss (Doc. 9). This case arises out of the death of a minor after continued physical abuse by her mother. For the following reason, the motion is GRANTED as to the federal claim. The state law claims are dismissed without prejudice.

### <u>Facts</u>

Plaintiffs Kevin Lipman as Administrator of the Estate of Ta'Naejah McCloud, deceased, and Shabrina McCloud filed this Complaint against defendants Armond Budish (in his official capacity as Cuyahoga County Executive), Cuyahoga County Children and Family

Services (CFS), Tequila Crump, Ursula Owens, Kristina Quint, Ada Jackson, and Marquetese Betts.[1] The Complaint alleges the following in relevant part.

Ta'Naejah was a five year old child with a developmental disability who died on March 19, 2017. Prior to 2016, Ta'Naejah lived with defendant Crump, her biological mother, and plaintiff McCloud, who had legal custodial rights, in the state of Virginia. In 2016, McCloud separated from Crump. Crump then moved in with defendant Owens in Cleveland, Ohio. Beginning in October 2016, Crump and Owens repeatedly physically abused Ta'Naeja which ultimately resulted in her death. Crump and Owens were both convicted by a jury in connection with the death. During this time, defendants Quint, Jackson, and Betts were social workers/employees (sometimes referred to as case workers) of CFS. They are sued in their individual capacity.

In September and October 2016, it was reported to a CFS social worker and another Cuyahoga County employee that Crump and Owens were burning and beating Ta'Naeja, but the the abuse was not reported or properly investigated as mandated by Ohio statute. In October 2016, Ta'Naeja was taken to University Hospitals with third degree burns. The hospital social worker reported to the CFS social worker that the burns were not self-inflicted, but CFS refused to investigate. Ta'Naeja was then admitted to Metro Health Medical Center Burn Intensive Care Unit and the suspected physical abuse by her mother was reported to defendant Quint. Quint interviewed Ta'Naeja during the hospitalization in the presence of Crump and Owens who were accused of committing the abuse. Quint refused to investigate and ultimately, Quint discharged Ta'Naeja from the hospital into the custody of Crump and

---

[1] Jane and John Does were also named but have not been identified.

2

Owens. After the discharge and until Ta'Naeja's death, multiple complaints of neglect and physical abuse were made to CFS but the reports were not investigated.

In February 2017, a county social worker reported to CFS that Ta'Naeja was being physically abused and defendant Jackson was responsible for investigating the report. CFS refused to investigate. In February 2017 and until Ta'Naeja's death, CFS took co-custody of Ta'Naeja. A CFS case worker took her to medical appointments. Defendant Betts determined that the risk level for Ta'Naeja was high, took co-custody, and kept her case open. On February 7, 2017, defendant Jackson was present but left the room when Ta'Naeja was examined by a physician who determined that Ta'Naeja had multiple scars on her body and was malnourished. Despite the complaints made to CFS during this time, CFS continued to return Ta'Naeja to the home of Crump and Owens. Between February and March 2017, CFS received multiple complaints of physical abuse of Ta'Naeja and went to the home on five occasions. Each time, CFS social workers interviewed Ta'Naeja in front of Crump and Owens in violation of the Ohio Administrative Code and CFS policy.

Between February and March 2017, defendant Jackson discovered that Ta'Naeja was sleeping on the floor and had no bed. Also during this time, CFS was aware that Ta'Naeja was in a home invested with bed bugs and cockroaches. It was reported to CFS that Ta'Naeja was eating cockroach-filled sandwiches, and yet CFS continued to return her to the home of Owens and Crump.

On March 17, 2017, while in the co-custody and care of CFS, Ta'Naeja was brought to the emergency room and died of her injuries on March 19, 2017. An autopsy concluded that the cause of death was homicide and Crump and Owens were subsequently convicted

thereof.

The Complaint sets forth five claims. Count One alleges a claim against the County defendants (Budish, CFS, Quint, Jackson, and Betts) for a violation of substantive and procedural due process as protected by the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. Count Two alleges wrongful death against Quint, Jackson, and Betts. Count Three alleges wrongful death against Crump and Owens. Count Four alleges a survival action of all counts against all defendants. Count Five alleges statutory failure to report against "Cuyahoga County[2], John/Jane Does."

This matter is now before the Court upon the Motion to Dismiss of defendants Budish, CFS, Betts, Jackson, and Quint.

**Standard of Review**

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir.2008) ). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc*., 123 F.3d 394, 400 (6th Cir.1997). As outlined by the Sixth

---

[2]     Cuyahoga County is not actually named as a defendant but is treated as one through the official capacity suit against Armond Budish.

Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). Thus, *Twombly* and *Iqbal* require that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face based on factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 570; *Iqbal,* 556 U.S. at 678. The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

### Discussion

**(A) Federal Claim**

**(1) Defendant CFS**

Defendants correctly point out that Cuyahoga County Children and Family Services is not an entity *sui juris.* Plaintiffs make no specific argument to the contrary. CFS "is a department or agency of Cuyahoga County, and is not *sui juris* and cannot be sued in its own right." *Loper v. Cuyahoga County Children and Family Services*, 2019 WL 1597552 (N.D.Ohio April 15, 2019).

Accordingly, this defendant is dismissed. [3]

**(2) Defendant Budish**

Defendant Budish is named in his official capacity as County Executive of Cuyahoga County. A § 1983 claim against a state actor in his official capacity is construed as a suit against the government entity that the officer represents. *Kentucky v. Graham*, 473 U.S. 159 (1985). Thus, the Complaint against Budish is a suit against Cuyahoga County. "For a county to be liable under § 1983, the plaintiff must demonstrate that an officer of the county committed a constitutional violation as a result of a county custom or policy. *See Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005) ("[A] municipality may be held liable under § 1983 only where its policy or custom causes the constitutional violation in question.") (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978) )." *Tibbs v. Bryan,* 2018 WL 7890390 (6th Cir. Dec. 12, 2018). It is well-settled that "respondeat superior is not available as a theory of recovery under section 1983." *Curtis v. Breahitt County Fiscal Court*,

---

[3]     The Court also notes that the Complaint alleges at numerous points that "a Cuyahoga County employee" had knowledge, abuse was reported to "a CFS social worker," and abuse was reported "to CFS." As discussed herein, CFS is not *sui juris* and the County cannot be held liable absent a named policy. Otherwise, allegations must be made against the individually named defendants Quint, Jackson, and Betts. These individuals cannot be held liable for allegations made against CFS or the County. *See Frazier v. Michigan*, 41 Fed.Appx. 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, 2000 WL 1800569 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *March v. Aramark Corp.,* 2018 WL 1524606 (E.D.Tenn. March 28, 2018)(Where the plaintiff fails to set forth specific allegations as to some of the individual defendants, the court cannot plausibly infer that those individuals were personally involved in any violation of plaintiff's constitutional rights.)

756 Fed.Appx. 519 (6th Cir. 2018) (citing *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 507

(6th Cir. 1996) and *Monell*). Accordingly, plaintiffs "must prove that the municipality itself is

the wrongdoer." *Id.* To do so, plaintiffs must: (1) identify the County policy or custom, (2)

connect the policy to the County, and (3) show that their particular injury was incurred due to

the execution of that policy. *Id.* (citing *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir.

2005)). Finally, "A 'custom' must be so permanent and well-settled as to constitute a custom

or usage with the force of law." *Id.* (citing *Monell*).

Assuming there is a constitutional violation (discussed below), defendants maintain

that the Complaint fails to allege a County custom, policy, or practice that was the moving

force behind any alleged constitutional violation.

In response, plaintiffs argue that they have stated a claim against the County by

adequately pleading (1) inadequate supervision and (2) a custom of tolerance. For the

following reasons, this Court disagrees.

The Complaint contains one count under § 1983. That count alleges a violation of

plaintiffs' substantive and procedural due process rights, but nowhere does it allege that the

County had a custom, policy, or practice that injured plaintiffs. Plaintiffs now want the Court

to find that they have plead inadequate supervision based on some of the factual allegations of

the Complaint. "Inadequate training or supervision will give rise to municipal liability, in

limited circumstances, where a local government's decision not to train certain employees

about their legal duty to avoid violating citizens' rights rises to the level of an official

government policy for purposes of § 1983." *Taylor v. City of Brownsville,* 2018 WL 5850189

(6th Cir. Nov. 8, 2018) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). " To establish a

failure to train or supervise claim, a plaintiff must sufficiently plead that (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Id.* (citing *Regets v. City of Plymouth*, 568 F. Appx 380 (6th Cir. 2014) (other citations omitted). Plaintiffs have not plead such. Plaintiffs point to ¶ 38 of their Complaint wherein it is alleged:

> On or about October 17, 2016 and continuing thereafter, Kristina Quint ignored professional opinions from the doctors, nurses and social workers indicating that the injuries sustained by Ta'Naeja were not self-inflicted, and ignored Ohio statutes by deciding to and acting to discharge Ta'Naeja without appropriate investigation, written reports, review and oversite from her superiors and public agencies.

This paragraph does not allege a failure to supervise the case workers which amounts to an official policy.

Next plaintiffs assert that they have adequately plead a "custom of tolerance." Plaintiffs do not point to such an allegation in their Complaint but maintain that their allegations that social workers interviewed Ta'Naeja in front of Crump and Owens in violation of the Ohio Administrative Code and CFS policy establishes such a custom. Again, the Court disagrees. A custom is not alleged. And, the allegation is that the case workers violated CFS policy, not that the policy caused a constitutional violation.

In the absence of a *Monell* claim, the Complaint fails to state a claim against the County. Therefore, defendant Budish in his official capacity is dismissed.

### (3) Defendants Quint, Jackson, and Betts

#### Count One- Section 1983

Remaining County defendants social workers Quint, Jackson, and Betts argue that

Count One fails to state a claim for violation of substantive or procedural due process.

To prevail on a § 1983 claim, a plaintiff must prove 1) the deprivation of a right secured by the Constitution or laws of the United States which was 2) caused by a person acting under the color of state law. *Winkler v. Madison County*, 893 F.3d 877 (6th Cir. 2018) (citations omitted). Where, as here, the individual defendants assert qualified immunity, the government officials may not be held liable if 1) the defendants did not violate any constitutional guarantees or 2) the guarantee, even if violated, was not clearly established at the time of the alleged misconduct. *Arrington-Bey v. City of Bedford Heights,* 858 F.3d 988 (6th Cir. 2017) (citations omitted). *See also Maye v. Klee*, 915 F.3d 1076 (6th Cir. 2019) (citing *Morgan v. Fairfield Cty.*, 903 F.3d 553, 560 (6th Cir. 2018) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) ("In analyzing whether an official is entitled to qualified immunity, we must make two determinations: first, whether the plaintiff's version of the facts alleges the deprivation of a constitutional right; and second, whether that right was clearly established such that a reasonable official would have known his actions were unconstitutional.") Additionally, as to whether the guarantee violated was "clearly established" at the time of the alleged misconduct, the law is clear that "a plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Arrington-Bey, supra* (citing *White v. Pauley*, 137 S.Ct. 548 (2017)).

Defendants argue that the Complaint fails to state a claim for a constitutional violation. For the following reasons, this Court agrees. Where, as here, there is no constitutional violation, there is no § 1983 claim and defendants are entitled to qualified

immunity.

### (i) Substantive Due Process

In *DeShaney v. Winnebago County Department of Social Services*, 109 S.Ct. 998 (1989), the United States Supreme Court held that the state has no constitutional duty under the substance due process clause to protect a child from his father after receiving reports of possible abuse. In *DeShaney*, a father had custody of his son. The department of social services (DSS) learned that the boy might have been a victim of child abuse. The boy was eventually admitted to a hospital and the DSS was notified of suspected child abuse. The DSS obtained a court order placing the boy in the temporary custody of the hospital. A child protection team, including DSS case workers, considered the situation but decided there was insufficient evidence of child abuse to retain the boy in the court's custody. He was returned to the custody of his father. Shortly thereafter, emergency room personnel notified a DSS case worker of the boy's additional suspicious injuries, but the case worker concluded that there was no basis for action. For the next six months, the case worker made monthly visits to the boy's home, wherein she observed suspicious injuries, but she did nothing more than record suspicions of abuse. DSS still took no action despite notification of another emergency room visit and two visits to the house where the case worker was informed that the boy was too ill to be seen. Ultimately, the father beat the boy which resulted in permanent brain damage. The Supreme Court concluded that while plaintiffs (the boy and his mother) may have a state law tort claim against the state, there was no substantive due process violation because nothing in that clause requires the state to protect the life of its citizens against the invasion by private actors. "A state's failure to protect an individual against private violence simply does not

constitute a violation of the Due Process Clause." The Court recognized an exception to this rule where an individual is in the custody of the state, rendering him unable to care for himself. But, the Court concluded that the exception did not apply because the boy was not in the state's custody when he was injured. He was in his father's custody and the fact that "the state once took temporary custody of [the boy] does not alter the analysis..."

The Sixth Circuit has explained the contours of a substantive due process claim which, in addition to the custody exception to the *DeShaney* rule, now recognizes a "state created danger exception":

> The Due Process Clause of the Fourteenth Amendment does not impose on the state an affirmative duty to protect individuals against private acts of violence. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). 'The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.' *Id.* at 195. There are, however, two recognized exceptions to this general rule. First, a duty to protect may arise when an individual is placed in the custody of the state. *Id.* at 199–200... Second, we have recognized a state-created-danger theory, whereby state actors may be held liable if their 'affirmative acts ... either create or increase the risk that an individual will be exposed to private acts of violence.' *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). To establish liability under the state-created-danger theory, a 'plaintiff must show: 1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff.' *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003).

*Engler v. Arnold*, 862 F.3d 571 (6th Cir. 2017).

Defendants argue that it is undisputed that defendants Owens and Crump caused Ta'Naeja's death, they were convicted of such, and they are private actors. But, plaintiffs argue, their Complaint adequately pleads both exceptions to the *DeShaney* finding: custody and the state created danger

11

**(a) custody exception**

*DeShaney* recognized that while a state's failure to protect an individual against private violence does not constitute a violation of the substantive due process clause, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney,* 109 S.Ct. at 199-200. The affirmative duty arises because the State has imposed a limitation on a person's freedom to act on his own behalf. The Court cited the examples of incarcerated prisoners and committed mental patients. It stated, however, that the exception did not apply in that case because "Petitioners concede that the harms Joshua suffered occurred not while he was in the State's custody, but while he was in the custody of his natural father, who was in no sense a state actor." *Id.* at 200. Even though the State had previously taken the boy into custody but returned him to his father and the State was aware of subsequent suspected abuse but did nothing, substantive due process protection still did not apply: "While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all[.]" *Id.*

The situation herein is the same as that in *DeShaney*, but plaintiff's argue that they fall within the custody exception. Plaintiffs argue that they have alleged the following facts showing that limitations had been imposed by defendants on Ta'Naeja's freedom to act. First, the Complaint alleged that defendants took Ta'Naeja into their custody while she was

hospitalized for burns and that CFS had the sole authority to discharge her from the hospital and to her parents. Second, the Complaint alleged that defendants physically took Ta'Naeja into their possession on multiple occasions such as when a case worker took her to medical appointments.

However, as stated above in *DeShaney* and as argued by defendants, there is no constitutional violation when the harm did not occur while in the State's custody. Like *DeShaney*, even though the defendants may previously have had custody of Ta'Naeja, the Complaint does not allege that the abuse occurred at that time.

Plaintiffs maintain that their allegations throughout the Complaint regarding when defendants had custody or "co-custody" of Ta'Naeja are sufficient to survive the motion. However, the Court agrees with defendants that "custody" is a legal conclusion and the facts in the Complaint do not plausibly allege the custody exception to *DeShaney.* In fact, the Complaint alleges that after she was discharged from the hospital in October 2016, she was in the custody of Crump and Owens through March 2017. (Compl. ¶ 42) The Complaint also alleges:

> h. In October 2016, [defendants] closed the file, and released Ta'Naejah to the custody of her mother despite information by doctors, nurses, hospital social workers that Ta'Naejah had suffered burn injuries that were not self- inflicted, and failed to conduct a child safety assessment as required by the statute; failed to act to remove Ta'Naejah from the home;

> k. In October 2016 and February 2017, [defendants] refused to recommend immediate transfer of Ta'Naejah to temporary protective custody when they knew or should have known that she had been neglected, or physically abused and beaten; and

> l. [Defendants] [r]eleased Ta'Naejah back to the custody of her mother despite that they knew or should have known Ta'Naejah was the victim of child abuse, that the mother had a propensity of violence, that the live in girlfriend had a propensity for violence and knew or should have known that said child abuse was likely to continue

and result in serious bodily harm and/or death to Ta'Naejah;

(Compl. ¶ 76 at 16-17). Thus, the Complaint establishes that the County did not have custody of Ta'Naeja. Plaintiffs argue that their allegations are sufficient to show that Ta'Naeja was "'volleyed' between the state and the mother and her girlfriend multiple times" and that this establishes that the state actually took custody. Unfortunately, plaintiffs' repeated allegations that the County had custody or co-custody of Ta'Naeja and then placed her back with her abusers is the same argument made in *DeShaney* which was rejected by the Supreme Court as a basis for a substantive due process claim.

Next, plaintiffs argue that *DeShaney* and the courts recognize that there is a constitutional duty when the child is in the foster care system, whether or not the child was actually placed into a foster home. But, plaintiffs do not allege that Ta'Naeja was in foster care.

In an attempt to avoid *DeShaney*, plaintiffs analogize their claim to the situation in *Stemler v. City of Florence*, 126 F.3d 856 (6th Cir. 1997). The case is clearly distinguishable. In *Stemler*, the officers were not entitled to qualified immunity on plaintiff's substantive due process claim because they owed a duty to protect her as she was in their custody. Plaintiff, who was drunk, was a passenger in a car being recklessly followed by the truck of her violently abusive boyfriend. After both vehicles were stopped, the police informed plaintiff that she would be arrested for public intoxication if she did not leave with the boyfriend who was also clearly drunk. The police lifted plaintiff out of the car and assisted her to the boyfriend's truck and physically placed her into the passenger seat in the truck. Plaintiff was then killed in a crash shortly thereafter. The court concluded that plaintiff was in the custody

of the officers in the sense that they had affirmatively acted to deprive her of her liberty.

Plaintiffs herein maintain that if the mere threat of arrest could amount to custody, then their allegations that defendants took complete control of Ta'Naeja during her hospitalization and took physical custody of her when accompanying her to medical appointments is sufficient to meet the custody exception. Again, the Court disagrees. Unlike *Stemler*, where the police removed plaintiff from a safe car and put her into the car of a drunk man who drove away and killed plaintiff in an ensuing crash, defendants herein did not alter Ta'Naeja's situation or create a danger that did not already exist. Rather, the affirmative act of returning Ta'Naeja to her mother is no different from the affirmative act which was rejected in *DeShaney*.

For these reasons, the Complaint fails to plausibly allege the custody exception.

**(b) state created danger exception**

As stated above, under the state created danger exception, state actors may be held liable if their affirmative acts create or increase the risk that an individual will be exposed to private acts of violence. Under this theory, plaintiffs must show: 1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff.

Defendants argue that plaintiffs have not plausibly alleged a state created danger. Plaintiffs assert that they have alleged a state create danger by pleading that: (1) defendants

affirmatively interviewed the abused child in front of the abusers in violation of state law and which placed her in danger and (2) defendants returned the child to a mother who was known to have been accused of starving, beating, and burning her in the past. Plaintiffs further assert that they have alleged affirmative acts by claiming that defendants refused to undertake mandatory investigations.

To the extent plaintiffs allege that defendants violated certain policies or state laws, the Court agrees with defendants that plaintiff are improperly attempting to convert alleged violations of state law into a federal due process claim. Additionally, *DeShaney* recognized that while the state may impose affirmative duties upon its agents, a violation of those duties does not "constitutionalize" the duties. *DeShaney*, 489 U.S. at 201-202.

Furthermore, *De Shaney* has already established that returning a child to a suspected abuser cannot be the basis of a substantive due process claim. This finding has been reiterated to stress that inaction by state officials does not amount to affirmative action so as to come within the state created danger exception: "[*DeShaney*] was also holding that the act of returning someone to the same dangers that existed status quo ante does not satisfy the state-action requirement." *Burkowski v. City of Akron*, 326 F.3d 702 (6th Cir. 2003). The Sixth Circuit has held that a failure to act on allegations of abuse do not establish a claim for violation of substantive due process:

> To the extent that [plaintiff] claims that [defendant's] inaction, that is, his refusal to investigate or report allegations of abuse, is the conduct at issue, [plaintiff] has failed to state a claim. A state official's failure to investigate or report allegations of child abuse does not constitute an affirmative act. *Langdon v. Skelding*, 524 F. App'x 172, 176 (6th Cir. 2013) (holding that "failing to remove a child from a foster home is not an affirmative act under the state-created danger exception" even where the officials' investigation revealed "obvious dangers" to the child's safety). Indeed, under *DeShaney*, even returning a child to an abusive home, without more, is insufficient to

create a constitutional duty to protect. 489 U.S. at 201.

*Engler v. Arnold*, 862 F.3d 571 (6th Cir. 2017).

The Sixth Circuit has rejected the state created danger exception to the *DeShaney* rule in other cases factually similar to the one herein. In *Langdon v. Skelding*, 524 Fed.Appx. 172 (6th Cir. 2013), employees of Child Protective Services (CPS) had received numerous child abuse complaints over the years allegedly committed by the child's father and step-mother. After each complaint, CPS rejected the case for further investigation. Ultimately, several complaints came to the attention of defendants, including that the child was kept chained to her bed, but they still did not investigate. The child then died in a house fire while chained to her bed. The court concluded that there was no substantive or procedural due process claim. As to substantive due process, the court stated that "a failure to act does not satisfy the affirmative act prong" of the state created danger exception. "The facts alleged merely show that the defendants did not do enough to investigate the complaints of abuse, and this is a mere failure to act." Plaintiffs herein assert that they have alleged more than a failure to act because they repeatedly allege that defendants returned Ta'Naeja to her mother. But, this is exactly what happened in *DeShaney.*

Plaintiffs fail to plausibly allege an affirmative act by defendants. In fact, the alleged affirmative act (returning Ta'Naeja to the custody of her mother) is indistinguishable from the facts of *DeShaney* wherein the Supreme Court rejected a substantive due process claim.

For these reasons, plaintiffs fail to state a substantive due process claim.

### (ii) Procedural Due Process

Defendants also argue that plaintiffs have failed to state a plausible procedural due

17

process claim. For the following reasons, this Court agrees.

While Count One alleges that defendants violated plaintiffs' procedural due process rights, there are no specific allegations supporting such other than the following paragraph:

> On or about October 21, 2016, [CFS] social worker Kristina Quint actively discharged Ta'Naeja from the hospital, into the custody of Tequila and Ursula without affording Ta'Naeja due process.

(Compl. ¶ 37). Plaintiffs argue that they have alleged that defendants affirmatively chose not to follow Ohio statutes (Ohio Revised Code (ORC) §§ 2151.421 and 5153.16) which deprived Ta'Naeja of her due process rights. The Complaint does allege that defendants violated these statutes but does not allege that their due process claim is based on the violation of the statutes. Assuming it did, defendants point out that the Sixth Circuit has stated, "We have noted before that state-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory." *Langdon, supra.* Defendants maintain, and the Court agrees, that the statutes cited in the Complaint do not provide for any guaranteed substantive outcome.

The Complaint alleges that defendants did not report abuse as mandated by ORC § 2151.421, refused to properly investigate allegations of abuse and neglect as mandated by ORC §§ 5153.16(a)(1) and 2151.421(G), and interviewed Ta'Naeja in front of Owens and Crump in violation of Ohio Administrative Code 5101:2-36-03 and CFS policy 2.03.00. (Compl. ¶¶ 20-23, 39-40, 47).

Defendants point out that while § 5153.16(a) states that the "public children services agency shall... make an investigation concerning any child alleged to be abused, neglected, or dependent child," there is no mandated outcome for such an investigation. Nor does §

18

2151.421(G) guarantee a particular outcome to an investigation where it states that the "public services agency shall investigate, within twenty-four hours, each report of child abuse or child neglect that is known or reasonably suspected..."

In response, plaintiffs merely assert that defendants' affirmative acts in ignoring these mandatory Ohio statutes have infringed on plaintiff's due process rights because the statutes guarantee substantive outcomes.[4] However, plaintiffs do not demonstrate where the statutes guarantee any outcome. In *Langdon,* the Michigan statute required that the department file a petition in the court when it was determined that a child had been abused. But, the court found that the statute, while containing mandatory language, did not grant a particular outcome. Thus, the due process claim failed. *Langdon* cited to *Tony L. v. Childers,* 71 F.3d 1182 (6th Cir. 1995), which involved a Kentucky statute requiring that, upon receipt of a report of abuse, the agency "shall initiate a prompt investigation, take necessary action and shall offer protective services..." The court determined that while the statute mandated action, it "did not create a protected interest because the statute granted only an expectation of process, not a particular outcome." Further, "An expectation that some sort of action will be taken is not enough. Rather, a plaintiff must have an expectation that a particular result will follow from a particular, required action." *Id.*

Plaintiffs assert that the following statutory provisions guarantee substantive outcomes: ORC § 2151.421(A)(1)(a) (No person acting in an official or professional capacity

---

[4]     Although plaintiffs allege that defendants interviewed Ta'Naejah in front of Crump and Owens in violation of the standard of care in OAC 5101:2-36-03, plaintiffs do not contest defendants' argument that the administrative regulations do not mandate any outcome that would amount to a procedural due process right. The Court agrees with defendants.

with a reasonable suspicion of child abuse "shall fail to immediately report that knowledge...

to the entity or persons specified in this division."), § 2151.421(A)(1)(b) (outlines specific

individuals who must report and among them are health care professionals), § 2151.421(D)(3)

("If a health care professional provides health care services in a hospital ... to a child about

whom a report has been made ... the health care professional may take any steps that are

reasonably necessary for the release or discharge of the child to an appropriate environment.")

Sections (A)(1)(a) and (b), however, simply impose on certain persons a duty to report

child abuse.  But, no procedural rights are guaranteed. Furthermore, defendants point out that

the Complaint does not contain allegations that defendants failed to report the abuse.[5]  Rather,

the  allegations are premised on defendants' failure to properly investigate reports of abuse,

failure to remove the child from her mother, and the placement of the child in the custody of

the mother.

Sections (1)(b) and (D)(3) apply to health care professionals.  None of the named

defendants are health care professionals. Additionally, (D)(3) does not mandate or guarantee

anything, but only allows health care professionals to discharge the child to an appropriate

environment.

Plaintiffs also point specifically to § 2151.421(G)(1)'s requirements that the agency

"shall investigate within twenty-four hours" and "the investigation shall be made in

cooperation with the law enforcement." Plaintiffs assert that neither occurred. Again,

however, the statute does not have a procedural process. And, as defendants point out, the fact

---

[5]     There is one allegation that "a Cuyahoga County employee" knew Crump and
        Owens were burning Ta'Naeja but failed to report it.  (¶ 20) None of the named
        defendants is identified in this allegation.

that defendants did not investigate within 24 hours is irrelevant since Ta'Naeja was not harmed at the hospital.

Plaintiffs additionally point to § 2151.421(M) which states that the cooperation is to be done in accordance with the memorandum of understanding to "ensure that children are protected from abuse and neglect." Plaintiffs assert that this language guarantees a particular outcome, i.e., to ensure that children are protected from abuse and neglect. However, this section actually states: "The department of job and family services may enter into a plan of cooperation with any governmental entity to aid in ensuring that children are protected from abuse and neglect." Thus, the statute refers to a discretionary plan, and there is no procedure outlined or any outcome guaranteed.

Finally, plaintiffs argue that because the Sixth Circuit has determined that due process requires notice and a hearing prior to the removal of a child from her home, *Kovacic v. Cuyahoga County Dept. of Children and Family Services*, 724 F.3d 687 (6th Cir. 2013), the inverse must also be true, i.e., there should have been notice and a hearing before Ta'Naeja was placed into a known abuser's home. But, plaintiffs cite to no support for the proposition that there is a procedural due process right in this situation.

For these reasons, plaintiffs fail to state a claim for procedural due process. Because there is no constitutional violation (based on substantive or procedural due process), defendants are entitled to qualified immunity. Count One is dismissed.

**(B) State Law Claims**

The remaining claims (wrongful death, survival action, and statutory failure to report)

are purely state law claims between the non-diverse[6] parties. This Court, having dismissed all federal claims asserted in this case, declines to exercise supplemental jurisdiction over the remaining state law claims.  *See Wellman v. Wheeling and L Lake Erie Railway Co.*, No. 97-3084, 1998 WL 25005, **4 (6th Cir. January 12, 1998)(*citing Gaff v. FDIC*, 814 F.2d 311, 319 (6th Cir. 1987)) ("We have long recognized a general rule disfavoring a district court's exercise of pendent jurisdiction when federal issues are dismissed before trial."); *AES-Apex Employer Services, Inc. v. Rotondo*, -F.3d.-, 2019 WL 2151317 (6th Cir. May 17, 2019) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343,(1988)) ("In the usual case in which all federal-law claims are eliminated before trial, district courts should decline to exercise jurisdiction over the remaining state-law claims."). Accordingly, Counts Two through Five are dismissed without prejudice.

**Conclusion**

For the foregoing reasons, defendants' Motion to Dismiss is granted as to the federal claim.  The state law claims are dismissed without prejudice.

IT IS SO ORDERED.


                                    /s/ Patricia A. Gaughan
                                    PATRICIA A. GAUGHAN
                                    United States District Court
                                    Chief Judge
Dated: 5/23/19

_____

[6]        There is not complete diversity.

22