## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **KEVIN LIPMAN** as Administrator | ) | Civil Action No: 18-CV-02985 |
| of the Estate of Ta'Naejah McCloud, | ) | |
| Deceased **SHABRINA McCLOUD,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **-vs-** | ) | |
| | ) | JUDGE PATRICIA A. GAUGHN |
| **CUYAHOGA COUNTY, TEQUILA CRUMP,** | ) | |
| **URSULA OWENS INDIVIDUALLY AND** | ) | |
| **KRISTINA QUINT**, **ADA JACKSON,** | ) | |
| **MARQUETESE BETTS, GENEKE** | ) | |
| **JACKSON (GENEKE JACKSON** | ) | |
| **PREVIOUSLY DISMISSED-PRESERVED** | ) | |
| **FOR APPEAL) individually, and or as** | ) | |
| **Agents of Cuyahoga County,** | ) | |
| | ) | |
| | ) | Jury Trial Demanded |
| Defendants. | ) | |

### SECOND AMENDED COMPLAINT AT LAW
### CIVIL RIGHTS/1983 ACTION and ANCILLARY STATE CLAIMS

Now come the Plaintiffs, KEVIN LIPMAN, as Administrator for the Estate of Ta'Naejah

McCloud, SHABRINA MCCLOUD, by and through their attorneys, DERATANY & KOSNER

and RANDAZZO LAW, LLC, and for their Complaint against the Defendants allege and state as

follows:

### JURISDICTION AND VENUE

1.      This action is brought to recover damages, compensatory, punitive, and

exemplary in nature and to obtain other appropriate relief pursuant to 42 U.S.C.§1983, and in

violation of Due process Clause of the United States Constitution and laws of the State of Ohio.

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. §1331, 1343 and 1367.

3.      Plaintiff Kevin Lipman resides in the Northern District of Ohio.

4.      The matters described herein occurred in the Northern District of Ohio. Therefore,

venue for this action lies in the Northern District of Ohio pursuant to 28 U.S.C.§1391.

## PARTIES

5.     The Plaintiff Shabrina McCloud, is an adult citizen of the United States residing in Lynchburg, VA and was in loco parentis mother of Ta'Naejah McCloud.

6.     The Plaintiff Kevin Lipman an adult citizen of the United States residing in Cuyahoga County, Ohio was appointed on September 24, 2018 as administrator of the Estate of Ta'Naejah McCloud, (order of appointment attached hereto as exhibit "A" to this complaint).

7.     The Defendants Ada Jackson, Kristina Quint, and Marquetese Betts, are all individual defendants, and agents of Cuyahoga County and/or Cuyahoga County  Department of Children and Family Services at all times relevant in Plaintiffs' Second Amended Complaint at Law.

8.     At all times described herein, Defendants were social service workers and/or employees employed by Cuyahoga County and/or Cuyahoga County Children and Family Services  operating in the course and scope of their employment. Ada Jackson, Kristina Quint, and Marquetese  Betts, are being sued individually and as agents of  Cuyahoga County as case workers and/or mandatory reporters for Cuyahoga County and/or Cuyahoga County  Children and Family Services.

9.     The Defendant Cuyahoga County is a political subdivision in and for Cuyahoga County, State of Ohio, (hereinafter "CCDCFS") located at 3955 Euclid Avenue Cleveland, OH. CCDCFS is a child protection agency, a division of Cuyahoga County charged with providing social services to children in order to promote a child's right to safety and stability, as well as ensuring freedom from abuse and neglect.

10.     The Defendant Tequila Crump (sometimes hereinafter referred to as "Crump") is an adult citizen of the United States, natural mother of Ta'Naejah McCloud who, at all times relevant, resided in Cuyahoga County and who was convicted in the death of Ta'Naejah McCloud, more specifically convicted of multiple counts of Reckless Homicide, multiple counts of Endangering Children, and was sentenced to serve time in the Ohio State Prison System.

11.     The Defendant Ursula Owens, (sometimes hereinafter referred to as "Owens") is an adult citizen of the United States, who at all times relevant herein, resided in Cuyahoga County and who was convicted in the death of Ta'Naejah McCloud, more specifically convicted of Murder, multiple counts of Reckless Homicide, Felonious Assault and multiple Counts of Endangering Children and was sentenced to serve time in the Ohio State Prison System.

## STATEMENT OF FACTS

12.     Decedent Ta'Naejah McCloud was a 5 year old child, born September 2, 2011, to Tequila Crump, biological mother and unknown father.

13.     Ta'Naejah suffered from a developmental disability.

14.     At the time of her birth, Ta'Naejah lived in Lynchburg, VA, with her biological mother, Tequila Crump, and her then partner, plaintiff, Shabrina McCloud, who was issued legal  custodial rights of Ta'Naejah by the State of Virginia, and had served as primary caregiver for  Ta'Naejah.

15.     At or around 2015-2016, Shabrina McCloud separated from Tequila Crump, and took  custody of  Ta'Naejah McCloud.  Ta'Naejah resided with Shabrina for over a year before Tequila returned to VA and moved Ta'Naejah to Cleveland, OH. During this time period Tequila Crump had little to no contact with Ta'Naejah.

3

16.     From 2015-2016 Tequila Crump abandoned Ta'Naejah and left her with Shabrina McCloud for about 8 months. During this time period Shabrina McCloud provided full care of Ta'Naejah.

17.     Between 2015-2016 Shabrina McCloud enrolled Ta'Naejah in the Lynchburg Public School district.  Ta'Naejah was provided an IEP evaluation and it was determined that she was a developmentally delayed child.

18.     The Lynchburg Public School district recognized Shabrina McCloud as Ta'Naejah's mother/parent.

19.     Shabrina named Ta'Naejah and Ta'Naejah carried her last name and middle name.

20.     At or about March 2016, defendant, Tequila Crump moved in with defendant  Ursula Owens in Cleveland, OH.  At this time Ta'Naejah resided with Shabrina McCloud.

21.     At or about June 2016 Tequila Crump moved Ta'Naejah to Cleveland, OH.

22.     Beginning in September 2016, and continuing to her death, Tequila Crump and Ursula Owens began to inflict severe and repeated abuse against Ta'Naejah.

23.     On or about September 15, 2016, Sierra Giles, the mother of Rayvon Owens, reported to Rayvon Owens' Guardian ad Litem and John/Jane Doe, unknown County Employee that Ursula Owens and Tequila Crump were physically abusing Ta'Naejah McCloud. Rayvon Owens was the son of and lived part time with Defendants Ursula Owens and Tequila Crump.

24.     On or about September 15, 2016, unnamed county employee reported back to Sierra Giles that "there was no use" in reporting to CCDCFS "because they would do nothing about it".  Thus, in September 2016, a Cuyahoga County employee knew or should have known that Crump and Owens were burning Ta'Naejah and failed to report it.

4

25.     On October 3, 2016 Sierra Giles reported directly to CCDCFS that Ursula Owens and Tequila Crump were punching Ta'Naejah and inflicting cigarette burns on her.

### FACTS RE:  STATE CREATED DANGER

26.     On October 4, 2016, with full knowledge that Ta'Naejah was possibly burned and abused by Defendants Crump and Owens, CCDCFS case worker Kristina Quint went to the Crump/Owens home and interviewed Ta'Naejah about whether Owens/Crump burned her with cigarettes and beat her. This interview took place while Ta'Naejah was sitting on the lap of her abusers, Ursula Owens and Tequila Crump.

27.     On October 4, 2016 and at all times relevant, Kristina Quint knew that interviewing a child abuse victim in the presence of the perpetrator parents would increase the level of the perpetrators' anger, and that it directly put the child in danger/and or increased danger and at risk for further abuse.

28.      Kristina Quint, as the CCDCFS case worker, also knew and admits that it was her  decision to undertake the affirmative act of interviewing Ta'Naejah in front of the abusers  Crump and Owens.

29.     On October 4, 2016 and at all times relevant, Kristina Quint knew that she was taking an "affirmative act" of interviewing the child in front of the abusers and that such action "increased the likelihood that the child would be further abused," yet interviewed the child knowing the risk.

30.     Kristina Quint admits that she knew that it was foreseeable that an abuser will retaliate against their victim as a result of being interviewed in front of the abuser, and "it is foreseeable that an abuser will retaliate" *even* if the victim does not admit to being abused.

31.     Though Kristina Quint knew it was foreseeable that Crump/Owens could retaliate as a result of her affirmative act of interviewing the abused child in front of the child's abusers, she admits that at CCDCFS it was custom and practice to interview a child suspected of being abused in front of the alleged perpetrators.

32.     Kristina Quint knew that the practice of interviewing an abused child in front of the alleged abusers was tolerated and allowed at CCDCFS.

33.     CCDCFS workers knew and admit that interviewing Ta'Naejah in front of her potential abusers created a more dangerous situation than not interviewing a child at all. This was a danger specific to Ta'Naejah and not the public at large.

34.     On or about October 4, 2016, Kristina Quint learned from Tequila Crump that Tequila suffered from Schizophrenia and was not on her medication for her mental illness.

35.     Within days of October 4, 2016, after CCDFS worker Kristina Quint interviewed Ta'Naejah in the presence of Crump and Owens, Crump and Owens starved and beat Ta'Naejah. Then on or about October 15, 2016, Owens and Crump inflicted second and third degree burns on Ta'Naejah, and refused to seek medical treatment for Ta'Naejah.

36.     On October 16, 2016, Ta'Naejah was admitted to University Hospitals Rainbow Babies and Children's Hospital for severe second and third degree burns, and transferred to Metro Health Hospital, where she underwent multiple surgical procedures requiring extensive skin grafts. Ta'Naejah was discharged from Metro Health on October 29, 2016.

37.     On October 19, 2016 Kristina Quint went to the hospital and interviewed Ta'Naejah while on the lap of her abusers Crump and Owens. When interviewing Ta'Naejah she knew Ta'Naejah was hesitant to talk.  She continued to ask Ta'Naejah questions about how she received burns on both of her arms and hands inciting anger in the abusers.

38.    At the time Kristina Quint interviewed Ta'Naejah in front of her abusers on October 19, 2016 she knew that Tequila Crump suffered from Schizophrenia and other mental health issues and knew interviewing Ta'Naejah in front of her abusers would place Ta'Naejah at risk of suffering worse abuse and would place her at greater risk of more serious abuse at the hands of her abusers.  This was a danger specific to Ta'Naejah and not the public at large.

39.    After the interview of Ta'Naejah at Metro Health Hospital by Kristina Quint and immediately upon discharge from the hospital, Crump and Owens began to inflict more severe physical and psychological abuse on Ta'Naejah, by physically beating her, failing to take her to her follow-up visits after her grafting surgery, fracturing her collar bone, and refusing to feed her and give her water.

40.    Between October 29, 2016, upon discharge from MetroHealth Hospital, and February 13, 2017, CCDCFS received multiple additional reports that Ta'Naejah was being abused by Crump and Owens.

41.    On or about February 13, 2017, CCDCFS case worker Ada Jackson took over responsibility from Kristina Quint, and was responsible for investigating reports of abuse of  Ta'Naejah.

42.    Between February 13, 2017 and March 2017 CCDCFS received multiple complaints of physical abuse and neglect of Ta'Naejah including that she was malnourished and being starved, had multiple scars on her body and a protruding collarbone.

43.    Between February 13, 2017 and March 2017, Ada Jackson and Marquetese Betts went to the Crump/Owens home multiple times.

44.     On or about February 13, 2017, Ada Jackson went to the Crump/Owens home and interviewed Ta'Naejah in front of her abusers, Crump and Owens, and asked whether she was being abused by Crump and Owens.

45.     Ada Jackson knew that interviewing an abused child in front of her potential abusers "***could create a more dangerous situation than not interviewing the child at all.***"

46.     On February 16, 2017 Ada Jackson again interviewed Ta'Naejah in the presence of her abusers with knowledge that it could create a more dangerous situation for her.

47.     At the time Ada Jackson interviewed Ta'Naejah in front of her abusers she knew that Tequila was suffering from schizophrenia and other mental health issues and knew that interviewing a child in front of a schizophrenic abuser would place Ta'Naejah in grave danger of being further abused and subjected to worse abuse.

48.     On March 17, 2017, at approximately 10:00 A.M. Ursula Owens began yelling at Ta'Naejah, hit her multiple times, picked her up and threw her against the wall, threw her against the dresser, threw her to the ground, stepped on her and repeatedly hit Ta'Naejah.

49.     After the brutal beating of Ta'Naejah, Ta'Naejah was unconscious for approximately 10 hours and was unresponsive. Her abusers refused to call for medical assistance.

50.     At approximately 10:00 P.M. on March 17, 2017, Ta'Naejah was rushed to the emergency room, where she was examined, tested and determined to have bleeding on her brain. Ta'Naejah succumbed to her injuries and died on March 19, 2017. An autopsy performed on March 20, 2017 concluded that the cause of death of Ta'Naejah McCloud was, "multiple blunt force injuries" and the manner of death was homicide.  The autopsy further found multiple scars; multiple healing rib fractures; and a protruding, fractured collarbone from the ongoing abuse Ta'Naejah suffered.

## CUSTOM AND POLICY –*MONELL*

51.     Kristina Quint began working for CCDCFS in 2006 and had been trained

on  interviewing children regarding  abuse by her supervisors in 2006.

52.     Kristina Quint had been conducting interviews of abused children for at least ten

years prior to being assigned to Ta'Naejah McCloud, and conducted the interview of Ta'Naejah

in the same manner that she had conducted CCDCFS interviews for the prior ten years.

53.     Although, Kristina Quint knew she was required by the standard of care and the

written CCDCFS policy to interview Ta'Naejah alone, she followed the custom and practice at

CCDCFS by interviewing Ta'Naejah in front of her abusers Crump and Owens.

54.     For ten or more years the CCDCFS custom of interviewing an abused child in

front of  her abusers was tolerated by CCDCFS.

55.     CCDCFS case worker Kristina Quint's decision to adhere to the tolerated custom

and practice of CCDCFS and interview Ta'Naejah in the presence of the alleged abusers, placed

the child in grave danger, increased the risk of further injury and placed the child in a worse

position than if the state worker had not of acted at all. This act emboldened Crump and Owens

to inflict worse physical abuse on Ta'Naejah.

56.     CCDCFS case worker Ada Jackson was in a transition training period and

under the  supervision of Marquetese Betts, when she conducted two interviews of Ta'Naejah

in front of  her abusers.  She was not trained on how to interview abused children or on any

policy for  interviewing abused children at CCDCFS.

57.     Marquetese Betts was aware and tacitly accepted Ada Jackson interviewing

Ta'Naejah in front of her abusers on two occasions, increasing the risk of danger of worse abuse

being inflicted on Ta'Naejah.

58.     The CCDCFS supervisors for a period of over 10 years tolerated the custom of interviewing abused children in front of their abusers placing them at greater risk of being abused worse by their abusers.

59.     Ada Jackson's supervisor knew that her case worker was interviewing child victims in front of their abusers creating a risk of danger of being abused worse by their abusers.

60.     CCDCFS supervisor Marquetese Betts was aware that Ada Jackson interviewed Ta'Naejah on two occasions in front of her schizophrenic abuser and condoned, ratified, and tacitly accepted Jackson interviewing Ta'Naejah in front of her abuser who suffered from a mental disorder increasing the risk of greater danger and abuse to Ta'Naejah.

61.     CCDCFS Senior Manager Latasha Brown was a supervisor of  Kristina Quint in 2016-2017 and oversaw the Investigations department  during this time.  Ms. Brown had been a senior manager with DCFS for approximately 14  years during this time period.

62.     CCDCFS Senior Manager Latasha Brown was responsible for ensuring that her employees she supervised followed the agency's policies and procedures and social service worker  standards of care.

63.     CCDCFS Senior Manager Latasha Brown interviewed 175 kids in front of their alleged abusers in her 26 year employment with CCDCFS.  Ms.  Brown knew that interviewing a child in front of their alleged abusers placed that child at greater risk of danger of being abused.

64.     CCDCFS Senior Manager Latasha Brown knew that interviewing a child about the abuse being inflicted on him or her in front of his or her abuser is subjecting that child to torture.

65.    CCDCFS Senior Managers were aware that social service workers were interviewing alleged child victims in front of their abusers and condoned, ratified, and tacitly accepted interviewing children in front of their alleged abusers.

66.    In 2016 during Kristina Quint's investigation of Ta'Naejah's third degree burns, CCDCFS Senior Manager Latasha Brown submitted this case to the quality assurance unit for review.

67.    The quality assurance unit condoned, ratified and tacitly accepted Quint interviewing Ta'Naejah in front of her abusers, one of whom suffered from a mental disorder, increasing the risk of greater danger and abuse to Ta'Naejah.

68.    Kristina Quint was never disciplined or reprimanded for interviewing Ta'Naejah in front of her alleged abusers, one of whom suffered from a mental disorder, increasing the risk of greater danger and abuse to Ta'Naejah.

69.    Ada Jackson was never disciplined or reprimanded for interviewing Ta'Naejah in front of her alleged abusers, one of whom suffered from a mental disorder, increasing the risk of greater danger to Ta'Naejah.

70.    Marquetese Betts was never disciplined or reprimanded for approving and allowing Ada Jackson to interview Ta'Naejah in front of her alleged abusers. Betts was never disciplined for not disciplining or reprimanding Ada Jackson for her affirmative acts of interviewing Ta'Naejah in front of her alleged abusers.

71.    Ada Jackson and Kristina Quint's interviews of Ta'Naejah in front of her abusers were never investigated until after the death of Ta'Naejah on March 19, 2017.

## OCTOBER HOSPITALIZATION

72.    On October 16, 2016, Ta'Naejah was taken to University Hospitals Rainbow Babies and Children's Hospital ("RBC") with Third Degree burns. The Rainbows Babies social worker reported to the CCDCFS case worker that these burns were not self - inflicted as reported by Crump and Owens, but in fact, were the result of abuse.

73.    On or about October 17, 2016, Ta'Naejah was transferred to Metro Health Medical Center Burn Intensive Care Unit; she was admitted with third degree burns on the back of her hands, arms and all of her fingers. Kathy Mahoney, the hospital social worker from Metro Health reported the abuse to CCDCFS specifically indicating that the burns were indicative of physical abuse.

74.    CCDCFS gave specific authority to the hospital to discharge Ta'Naejah back to Crump and Owens, on or about October 29, 2016 without doing an investigation into the hot water heater of the home where Ta'Naejah resided.

75.    During the October 2016 hospitalization, Dr. Yowler reported to the MetroHealth Medical Center social worker that the burns were not self- inflicted and were the result of submersion burns.  This information was reported to CCDCFS case worker Kristina Quint prior to discharge.

76.    During the October 2016 hospitalization, Kathy Mahoney also called CCDCFS several times throughout the admission of Ta'Naejah and reported to CCDCFS case worker Kristina  Quint that the burn injuries were suspicious injuries and were not self-inflicted.

77.     On or about October 17, 2016 and continuing thereafter, Kristina Quint ignored professional opinions from the doctors, nurses and social workers indicating that the injuries sustained by Ta'Naejah were not self-inflicted and acted to discharge Ta'Naejah to an unsafe and dangerous environment without appropriate investigation, review and oversite from her superiors public agencies and independent third parties.

### February 2017-March 2017

78.     Between February 13, 2017 and March 17, 2017, prior to the physical abuse that resulted in Ta'Naejah's death, Ta'Naejah suffered multiple rib fractures while being monitored by CCDCFS.

79.     Between February 13, 2017 and March 2017, CCDCFS maintained an "open case" on Ta'Naejah, labeled her a High Risk for abuse and provided her custodial services.

80.     During the February physical examination and the March physical examination visits with Dr. Dietz, the only people in the room during the examination were Ada Jackson, Ta'Naejah and Dr. Dietz during Ta'Naejah's examination.

81.     From February 13, 2017 through March 2017 Ada Jackson was present during all of Ta'Naejah's doctor visits during that time period.

82.     On March 17, 2017, at approximately 10:00 A.M., while being monitored by CCDCFS, Defendant Crump repeatedly struck Ta'Naejah and stood by and watched Defendant Owens throw Ta'Naejah against the wall, the dresser and floor.

83.     On March 17, 2017, while  being monitored by CCDCFS,  at approximately 10:00 A.M. Ursula Owens began yelling at Ta'Naejah, hit her multiple times,   picked her up and threw her against the wall, threw her against the dresser, threw her to the  ground, stepped on her and repeatedly hit Ta'Naejah.

84.     For approximately 10 hours on March 17, 2017, Ta'Naejah became unresponsive at the home of Defendants Crump and Owens, yet they refused to call for medical assistance.

85.     At approximately 10:00 P.M. on March 17, 2017, Ta'Naejah was rushed to the emergency room, where she was examined, tested and determined to have bleeding on her brain. Ta'Naejah succumbed to her injuries and died on March 19, 2017. An autopsy performed on March 20, 2017 concluded that the cause of death of Ta'Naejah McCloud was "multiple blunt force injuries" and the manner of death was homicide.

**COUNT I – CIVIL RIGHTS/§1983 ACTION**
**VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS CLAUSE**
**CUYAHOGA COUNTY, KRISTINA QUINT, ADA JACKSON,  MARQUETESE BETTS,**
**GENEKA JACKSON (GENEKE JACKSON PREVIOUSLY DISMISSED—PRESERVED**
**FOR APPEAL)**

86.     Plaintiff KEVIN LIPMAN as administrator of the Estate of TA'NAEJAH MCCLOUD, restate and incorporate by reference, Paragraphs 1 through 85 of this Complaint as if fully re-written herein.

87.     At all times material to the facts set forth in this Complaint the individual Defendants Cuyahoga County, Defendants Kristina Quint, Marquetese Betts, Ada Jackson, were acting in their individual and/or official capacities as employees of Cuyahoga  County and/or Cuyahoga County Children Family Services and were  acting under color of state  law.

88.     At all times material the individual Defendants Cuyahoga County, Defendants Kristina Quint, Marquetese Betts, Ada Jackson, were acting in their individual and/or official capacities as employees of Cuyahoga County and/or Cuyahoga County Children Family and Services engaged in "state created danger" conduct that rendered Ta'Naejah more vulnerable to foreseeable physical abuse and death perpetrated by Crump and Owens.

89.     At all times material the individually named defendants created a condition of danger, which would have not existed had they not have taken the actions as set forth above. Defendants then failed to intervene after they created the danger for Ta'Naejah.

90.     Ta'Naejah McCloud had a constitutionally protected right to life and to be free from bodily harm. The actions of Defendants as set forth above violated the substantive due process rights of the Plaintiffs as protected by the Fourteenth Amendment of the United States Constitution and caused the injuries to Plaintiffs as set forth in Paragraphs 1-89, above.

91.     Said misconduct of each individually named Defendant is outrageous and demonstrates reckless and callous disregard of and indifference to the rights and safety of Ta'Naejah and are a result of reckless motive and intent, so as to support an award of punitive damages and attorney's fees.

92.     As a direct and proximate result of the foregoing outrageous, deliberate indifferent conduct and conduct in violation of the United States Constitution, 14th Amendment due process clause substantively by the Defendants, Ta'Naejah sustained the following injuries and damages, some or all of which caused her death:

    a.     sustained third degree burns on the back of her hands, arms and fingers requiring grafting surgery;

    b.     sustained repeated punches in the face, head and body along with other physical abuse between October 2016 through March 2017 resulting in multiple rib fractures, fractured clavicle, multiple lacerations and scarring;

    c.     sustained serious brain damage as a direct result of being repeatedly thrown against the wall, stomped, kicked in the head, and thrown against the dresser;

    d.    while suffering from a brain bleed was left for 10 hours without medical attention;

    e.    between October 2016 through February 2017 was deprived of necessary  food and nutrition, resulting in malnourishment;

    f.    sustained severe psychological trauma of a longstanding or permanent  nature;

    g.    sustained severe permanent brain damage resulting in hospitalization and  eventual death; and

    h.    was induced to inhale toxins from bleach/ammonia resulting in unconsciousness for a period of three hours or greater as a form of  punishment without medical care.

WHEREFORE Plaintiff Kevin Lipman as administrator for the Estate of Ta'Naejah McCloud, demands judgment in his favor and against Defendants CUYAHOGA COUNTY, KRISTINA QUINT, ADA JACKSON, MARQUETESE BETTS, as follows:

    i.    Enter judgment in favor of plaintiffs and against defendants, jointly and  individually, for damages incurred by plaintiffs as a result of defendants' unlawful conduct, together with interest;

    ii.    Enter judgment in favor of plaintiffs and against defendants, jointly and  individually, for compensatory damages, including, but not limited to  damages for mental anguish,  and other damages to be determined at trial,  together with interest;

    iii.    Enter judgment in favor of plaintiffs and against defendants, jointly and  individually, for punitive damages;

    iv.    Award plaintiffs their costs of this action, including expert witness fees  and a reasonable attorneys' fee; and,

    v.    Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of plaintiff's civil rights, to  prevent such recurrences in the future and to protect others from defendants' further unlawful behavior.

### COUNT II — STATE CLAIM WRONGFUL DEATH – -RECKLESS,WILLFUL, AND WANTON-, KRISTINA QUINT, ADA JACKSON, MARQUETESE BETTS, GENEKE JACKSON (GENEKE JACKSON PREVIOUSLY DISMISSED—PRESERVED FOR APPEAL)

93.    Plaintiffs, SHABRINA McCLOUD and KEVIN LIPMAN as administrator of the  Estate of TA'NAEJAH MCCLOUD, restate and incorporate by reference, Paragraphs 1 through 92 of this Complaint as if fully re-written herein.

and Ursula Owens began to inflict severe and repeated abuse against Ta'Naejah.

95.     Between September 2016 through March 2017, the above stated CCDCFS case workers and/or Cuyahoga County employees were contacted by neighbors and/or medical providers to report suspected abuse and neglect related to Ta'Naejah on numerous occasions. Cuyahoga County employees failed to report the suspected abuse and CCDCFS refused to appropriately investigate the abuse allegations as to Ta'Naejah.

96.     On or about September 2016, a Cuyahoga County employee knew Crump and Owens were burning Ta'Naejah but failed to report this abuse as mandated by Ohio Rev. Code 2151.421.

97.     On or about October 2016, a citizen reported to CCDCFS case worker that Crump and Owens were burning Ta'Naejah. CCDCFS, through its case worker, deliberately refused to investigate the claim as mandated by Ohio Rev. Code §5153.16(a)(1) and 2151.421(G).

98.     On or about early October 2016, it was reported to CCDCFS that Ta'Naejah was being beaten and punched in her face by defendants, Crump and her girlfriend Owens. CCDCFS refused to properly investigate these allegations of abuse and neglect as mandated by Ohio Rev. Code §5153.16(a)(1) and 2151.421(G).

99.     On or about October 17, 2016, Ta'Naejah was taken to University Hospitals Rainbow Babies and Children's Hospital ("RBC") with Third Degree burns. The hospital social worker reported to the CCDCFS case worker that these burns were not self - inflicted as reported by Crump and Owens, but in fact, were the result of abuse, and the CCDCFS caseworker refused to investigate these allegations of abuse and neglect as mandated by Ohio Rev. Code §5153.16(a) (1) and 2151.421(G).

100.     On or about October 18, 2016, Ta'Naejah was transferred to Metro Health Medical Center Burn Intensive Care Unit; she was admitted with third degree burns on the back of her hands, arms and all of her fingers. The hospital social worker reported the abuse to CCDCFS specifically indicating that the burns may not have been self-inflicted and were consistent with submersion burns.

101.     During the October 2016, hospitalization at Metro Health Medical Center, Kristina Quint failed to interview any of the medical care providers knowing that the providers indicated that the burns were not self -inflicted but were consistent with submersion burns.

102.     During the October 2016 hospitalization, Ta'Naejah was required to undergo painful grafting surgery as a result of the third degree burns.  The surgery was performed by Dr. Yowler.  Dr. Yowler reported to the Metro Health Medical Center social worker that the burns were not self-inflicted.  This  information was reported to CCDCFS case worker Kristina  Quint.

103.     During the October 2016 hospitalization, a Metro Health Medical Center nurse suspected Ta'Naejah suffered physical abuse by her mother and reported this to CCDCFS case worker Kristina Quint.

104.     During the October 2016 hospitalization, Kristina Quint interviewed Ta'Naejah about the abuse in the presence of the mother and Ursula Owens, both of whom were accused of committing the abuse. Ta'Naejah stated to Kristina Quint she went to the bathroom with her mom and she was scared of the hot water. Kristina Quint was required by standards of care and CCDCFS policy number 2.03.00, to interview Ta'Naejah alone under these circumstances.

105.     CCDCFS case worker Kristina Quint's decision to interview Ta'Naejah in the presence of the alleged abusers, placed the child in grave danger, substantially increasing the risk of further injury and placed the child in a worse position than if the state worker had not of acted

at all. This act emboldened Crump and Owens to inflict worse physical abuse on Ta'Naejah.

106.    During the October 2016 hospitalization, Metro Health Medical Center Nursing staff reported to CCDCFS worker Kristina Quint that Ta'Naejah said she was scared of the hot water and went to the bathroom with her mom, which contradicted the statements of the mother, Crump.

107.    During the October 2016 hospitalization, Metro Health Medical Center pediatric social worker Kathy Mahoney called CCDCFS several times throughout the admission of Ta'Naejah and reported to CCDCFS case worker Kristina Quint that the burn injuries were suspicious  injuries and were not self-inflicted.

108.    During Ta'Naejah's admission to RBC/Metro Health Medical Center it was reported to CCDCFS that Ta'Naejah was not enrolled in school, which is by standard of care, considered notice of abuse.

109.    On or about October 29, 2016, CCDCFS case worker Kristina Quint actively discharged Ta'Naejah from the hospital to an unsafe and abusive environment and failed to investigate  the hot water heater in the home.

110.    On or about October 17, 2016 and continuing thereafter, Kristina Quint ignored professional opinions from the doctors, nurses and social workers indicating that the injuries sustained by Ta'Naejah were not self-inflicted, and ignored Ohio statutes by deciding to and acting to discharge Ta'Naejah without appropriate, investigation, written reports, review and oversight from her superiors and public agencies.

111.    Kristina Quint misused her authority by actively discharging  Ta'Naejah into the care of her mother Tequila Crump and Ursula Owens without completing a proper investigation in violation of Ohio Rev. Code §5153.16(a)(1) and 2151.421(G).

112.     Through the hospital stay and while in the custody of CCDCFS, despite repeated requests from hospital staff, Kristina Quint refused to investigate the issue with hot water, go to the house and interview the other people who lived in the home, or interview the landlord in violation of Ohio Rev. Code §5153.16(a)(1) and 2151.421(G).

113.     The assessment/investigation, was not timely managed and was recklessly investigated and closed by Cuyahoga County CCDCFS in violation of O.A.C. Sec 5101:2-36-01/03.  CCDCFS refused to generate a written report of the abuse and forward the report to the appropriate agencies which would have ensured that Ta'Naejah would not be placed with Crump and Owens.

114.     After CCDCFS discharged Ta'Naejah from the hospital in October 2016 into the care of Crump and Owens and continuing through March 2017, multiple complaints of neglect and/or physical abuse were made to CCDCFS and none of those reports were investigated.

115.     In February, 2017 a county social worker reported to CCDCFS that Ta'Naejah was being physically abused.  Another case was opened with CCDCFS and Ada Jackson was responsible for investigating the report. CCDCFS refused to investigate this report which would have led to the removal of Ta'Naejah from Crump and Owens.

116.     In February 2017 Dr. Dietz informed Ada Jackson, Marquetese Betts and CCDCFS that Ta'Naejah was malnourished and had only gained 1 pound since October 2016.  CCDCFS supervisor Marquetese Betts determined that the risk level for Ta'Naejah was high, and kept her case open.

117.     On or about February 16, 2017 Ta'Naejah was examined by Dr. Dietz and other medical professionals.  CCDCFS case worker, Ada Jackson was present while Ta'Naejah was  being examined. Ta'Naejah had multiple scars on her body and a protruding collar bone which  Ada Jackson was informed of, but failed to investigate these injuries further or remove Ta'Naejah from the home.

118.     From February 13, 2017, through March 17, 2017, a number of complaints were made to CCDCFS concerning allegations of physical abuse. CCDCFS was aware of these reports and failed to fully investigate these allegations of abuse and failed to remove Ta'Naejah from the home.

119.     Between February 2017 and March 2017 CCDCFS received multiple complaints of physical abuse of Ta'Naejah and went to the home on five different occasions.  On each of those occasions CCDCFS case workers interviewed Ta'Naejah in front of Crump and Owens,  in violation of the standard of care, OAC 5101:2-36-03 and CCDCFS policy 2.03.00, and placed Ta'Naejah at greater risk of physical abuse than if they had not acted at all.

120.     Between February 2017 and March 17, 2017 Ada Jackson discovered that Ta'Naejah was sleeping on the floor with no pillow and no blanket and had no bed during the time period.

121.     During February, 2017 through March, 2017, CCDCFS was aware that Ta'Naejah was in a home infested with bed bugs and cockroaches.  It was reported to CCDCFS that Ta'Naejah was eating cockroach-filled sandwiches, and yet CCDCFS continued to return the child to the home of Owens and Crump.

122.     On March 16, 2017, the day before the brutal physical abuse of Ta'Naejah that resulted in her death, Defendants Crump and Owens made Ta'Naejah scrub the floor with a rag soaked in bleach.  Ta'Naejah was consumed by the aroma of the bleach, and became unconscious for several hours. During this incident CCDCFS had an open case on Ta'Naejah, and knew or should have known of the abuse.

123.    From September, 2016 through March, 2017, Defendant Owens repeatedly punched and violently pushed Ta'Naejah to the ground. Owens would use her hands, fists, belts, and other objects to strike Ta'Naejah.  These acts were witnessed by neighbors, family members, and other individuals living in the home. These events were reported to CCDCFS and CCDCFS refused to investigate these reports and continued to physically place the child with Owens and Crump.

124.    Between February, 2017 and March, 2017, prior to her death, Ta'Naejah suffered multiple rib fractures while CCDCFS had an open case of abuse or neglect on Ta'Naejah.

125.    On March 17, 2017, at approximately 10:00 A.M., while CCDCFS had an open case on Ta'Naejah and was monitoring Ta'Naejah, Defendant Crump repeatedly struck Ta'Naejah and stood by and watched Defendant Owens throw Ta'Naejah against the wall, the dresser and floor.

126.    On March 17, 2017, while being monitored by CCDCFS, at approximately 10:00 A.M. Ursula Owens began yelling at Ta'Naejah, hit her multiple times, picked her up and threw her against the wall, threw her against the dresser, threw her to the ground, stepped on her and repeatedly hit Ta'Naejah.

127.    For approximately 10 hours on March 17, 2017, Ta'Naejah became unresponsive at the home of Defendants Crump and Owens, yet they refused to call for medical assistance.

128.    At approximately 10:00 P.M. on March 17, 2017, Ta'Naejah was rushed to the emergency room, where she was examined, tested and determined to have bleeding on her brain. Ta'Naejah succumbed to her injuries and died on March 19, 2017. An autopsy performed on March 20, 2017 concluded that the cause of death of Ta'Naejah McCloud was, "multiple blunt force injuries" and the manner of death was homicide.

129.    Crump was arrested and charged, and convicted by a jury of reckless homicide and endangering children, as a result of the events which led to the death of Ta'Naejah McCloud. Ursula Owens was convicted by a jury of murder, reckless homicide, endangering children and felonious assault as a result of the events which led to the death of Ta'Naejah McCloud.

130.    Ada Jackson, Marquetese Betts, and Kristina Quint, were the individuals responsible for investigating suspicions of child abuse and neglect and protecting children who are at serious risk, and whose actions in placing or returning the child to Crump and Owens was reckless and indifferent to the known and obvious risks facing Ta'Naejah, and put the child in a worse position than had they not have acted at all.

131.    From October 2016 through March 2017, the condition and health of Ta'Naejah, including her physical appearance and assessments, continued to decline such that a reasonable person in a similar position should have suspected physical abuse and neglect was occurring and would have occurred as a result of the actions of the defendants.

132.    As a result of such reckless and willful, wanton conduct on the part of the Cuyahoga County Defendants in their individual and/or official capacities, these Defendants did create and place Ta'Naejah in danger and subjected her to serious harm, injury and death by failing to thoroughly investigate all allegations of abuse and neglect.

133.    Said misconduct of each individually named Defendant is outrageous and demonstrates reckless, willful, wanton, callous disregard of the rights and safety of Ta'Naejah.

134.    At all times material hereto, Cuyahoga County and/or CCDCFS knew or should have known that Defendant Owens had previous cases of physical abuse and neglect which were substantiated and resulted in the removal of her biological son by CCDCFS.

135.    At all times relevant, and pursuant to O.A.C. 5101:2-36-01, 5101:2-36-03, O.R.C. 2151.421, Kristina Quint, Ada Jackson, Marquetese Betts, as employees of Cuyahoga

County and/or CCDCFS were required to comply with regulations, in  providing social

services and investigating child neglect and abuse to children under the age of 18 years who had

suffered or faced the threat of suffering injury, disability or a condition of a  nature that

reasonably indicated abuse or neglect and failed to do so.

136.    On or about September 2016, and continuing to her death these Defendants owed

a duty to Ta'Naejah pursuant to Ohio Revised Code, regulations and standard of care requiring

social service workers to provide care and services to Ta'Naejah.

137.    At all times from September, 2016, up through March 17, 2017, Defendants had

a  common law duty, as well as a statutory duty and a duty pursuant to its voluntary

undertaking, to  protect the health, safety and best interests of Ta'Naejah in all situations in

which she was  vulnerable to child abuse or neglect, offer protective services in order to prevent

any further  harm to Ta'Naejah and to provide recommendations and services which will

stabilize the home  environment and preserve the life of the child.

138.    Defendants Kristina Quint, Ada Jackson, Marquetese Betts, breached their

duty of care that was owed to Ta'Naejah by one or more of the  following acts:

  a)    From October 2016 through February 2017 failed to monitor the safety of
        Ta'Naejah by  failing to recommend and provide the necessary services to
        Ta'Naejah including safety assessments, medical  treatment, in violation of
        OAC 5101:2-36-03, ORC 2151.421 and other  applicable statutory
        regulations;

  b.    Repeatedly and actively interviewed the child in front of the abusive
        parent, which put the  child in an unsafe and dangerous condition;

  c.    From September 2016 through March 2017, ignored and refused  to
        investigate reports of abuse and neglect, failed to investigate within 24  hours
        reports of abuse and neglect, failed to record reported abuse and  neglect
        complaints as statutorily mandated, failed to inform and work with  law
        enforcement agencies to assist in the investigation of reported abuse  and
        neglect complaints, failed to gather the requisite information in  accordance
        with OAC 5101:2-36, ORC 2151.421 and other applicable  statutory
        regulations, failed to file a report of its investigation, failed to  properly
        investigate reported cases of abuse and neglect;

d.     From February, 2017 through March 17, 2017, refused to monitor the  home of Ta'Naejah, failed to provide necessary living essentials to  Ta'Naejah i.e., food, bed, failed to remove Ta'Naejah from a cock roach  and bed bug infested home, failed to remove Ta'Naejah from an unsafe  and unsanitary living situation;

e.     From February 2017 through March 17, 2017 refused to remove Ta'Naejah from the home;

f.     From September 2016 through March 17, 2017 refused to investigate and evaluate whether Ursula  was a safety concern for Ta'Naejah despite previous allegations of abuse  directed toward her biological son, abuse known to the defendants that  resulted in the removal of the child from the home;

g.     Repeatedly closed cases of reported abuse and neglect without proper and thorough assessment and investigation;

h.     In October 2016, closed the file, and released Ta'Naejah to the custody of  her mother despite information by doctors, nurses, hospital social  workers that Ta'Naejah had suffered burn injuries that were not self-  inflicted, and failed to conduct a child safety assessment as  required by  the statute; failed to act to remove Ta'Naejah from the home;

i.     After October 2016, refused to implement an aftercare plan, as required by statutory regulations;

j.     From September 2016 through March 2017 disregarded warnings and pleas from family, friends, neighbors, doctors, nurses, and social workers of  Ta'Naejah regarding the child's safety and wellbeing despite repeated  reports of abuse and neglect;

k.     In October 2016 and February 2017, refused to recommend immediate transfer of Ta'Naejah to temporary protective custody when they knew or should have known that she had been neglected, or physically abused and beaten; and

l.     Released Ta'Naejah back to the custody of her mother despite that they  knew or should have known Ta'Naejah was the victim of child abuse, that  the mother had a propensity of violence, that the live in girlfriend had a propensity for violence and knew or should have known that said child  abuse was likely to continue and result in serious bodily harm and/or  death to Ta'Naejah;

139.    As a direct and proximate result of one or more of the aforesaid acts or omissions,

Ta'Naejah McCloud, sustained injuries resulting in her death on March 19, 2017 and suffered a

wrongful death.

140.    SHABRINA MCCLOUD in loco parentis Mother and  KEVIN LIPMAN as administrator of the Estate of Ta'Naejah McCloud bring this wrongful death action, pursuant to O.R.C. §2125.02.

141.    That on or about March 19, 2017, Ta'Naejah McCloud left surviving her:

SHABRINA MCCLOUD          In Loco Parentis Mother

BONITA D. RAY                      Biological Maternal Grandmother

WILLIE J. CRUMP                   Biological Maternal Grandfather

142.    Each of the above named employees were acting within the scope of their employment and thereby Cuyahoga County and/or Cuyahoga County Child Family Services have a  duty to indemnify each of the above named employees in accordance with O.R.C. 2744.07 (A)(1)(2) for any judgement relating to injury, death or loss of property, other than a judgement for punitive or exemplary damages that is obtained against the employee.

## COUNT THREE — WRONGFUL DEATH – -RECKLESS,WILLFUL, AND WANTON- TEQUILA CRUMP, URSULA OWENS

143.    Plaintiffs, SHABRINA MCCLOUD and KEVIN LIPMAN, restate and incorporate by reference, Paragraphs 1 through 142 of this Complaint as  if fully re-written herein.

144.    This cause of action is brought against defendants, Tequila Crump and Ursula Owens, who were each duty-bound to care for Ta'Naejah.

145.    Each of these caretakers were reckless, willful and wanton, abandoning entirely their duties to care for and protect Ta'Naejah and instead neglected, physically abused and caused her death.

146.    As a direct and proximate result of the caretaker's reckless, willful and wanton acts, Ta'Naejah suffered harms, losses and a wrongful death.

147.    Each of the caretakers exhibited a conscious disregard for the rights and safety of Ta'Naejah despite a great probability that substantial harm and death would result from such failure.  Such reckless conduct gives rise to the imposition of punitive damages.

148.    As a direct and proximate result of one or more of the aforesaid acts or omissions, Ta'Naejah McCloud, sustained injuries resulting in her death on March 19, 2017 and suffered a wrongful death.

149.    Plaintiffs SHABRINA MCCLOUD in loco parentis mother and KEVIN LIPMAN  as administrator of the Estate of Ta'Naejah McCloud bring this wrongful death action, pursuant  to O.R.C. §2125.02.

150.    That on or about March 19, 2017, Ta'Naejah McCloud left surviving her:

SHABRINA MCCLOUD          In Loco Parentis Mother

BONITA D. RAY                     Biological Maternal Grandmother

WILLIE J. CRUMP                  Biological Maternal Grandfather

All the above have suffered pecuniary loss, including grief and sorrow and loss of society as a result of Ta'Naejah's death.

WHEREFORE, Plaintiffs prays for judgment against each Defendant, jointly and severally, in an amount significantly in excess of $75,000 in compensatory damages on each cause of action in this complaint, an amount significantly in excess of $75,000 as and for punitive damages, as well as such other appropriate relief, including attorney's fees and litigation expenses, the costs of this action, pre and post judgment interest, and any other legal, equitable, injunctive or declaratory relief that may be just and appropriate.

## COUNT IV— SURVIVAL ACTION OF ALL COUNTS --
## CUYAHOGA COUNTY, KRISTINA QUINT, ADA JACKSON,  MARGUETESE BETTS,  GENEKA JACKSON (GENEKE JACKSON PREVIOUSLY DISMISSED— PRESERVED FOR APPEAL), TEQUILA CRUMP, URSULA OWENS

151.    Plaintiff KEVIN LIPPMAN as administrator of the Estate of Ta'Naejah McCloud restates and incorporates by reference, Paragraphs 1 through 150 of this Complaint as fully re-written herein.

152.    Prior to her death, Decedent Ta'Naejah McCloud endured great pain and suffering as a direct and proximate result of Defendants' willful, deliberate indifferent, wanton, negligent acts and pursuant to the Ohio Survival Act, O.R.C 2305.21, this cause of action, by reason of such pain and suffering has survived her death.

WHEREFORE, Plaintiff KEVIN LIPPMAN as Administrator of the Estate of Ta'Naejah McCloud, *deceased,* prays for judgment against each Defendants, jointly and severally, in an amount in excess of $75,000 in compensatory damages on each cause of action in this complaint, as well as other appropriate relief, including attorney's fees and litigation expenses, the costs of this action, pre and post judgment interest, and any other legal, equitable, injunctive or declaratory relief that may be just and appropriate.

Respectfully submitted,

*/s/Jay Paul Deratany*

_____

Jay Paul Deratany (IL6197097)
Roosevelt Allen III
Deratany & Kosner
221 N. LaSalle Street
Suite 2200
Chicago, Illinois 60601
312-857-7285
708- 298-2329 (Fax)
Email: jpderatany@lawinjury.com

-and-

Russell Randazzo (0082221)
Randazzo Law, LLC
Local Co-Counsel for Plaintiffs
55 Public Square — Suite 2100
Cleveland, Ohio 44113
216-350-4434
216-274-9318 (Fax)
Email: russell@rrandazzolaw.com

## **JURY DEMAND**

Plaintiffs respectfully request a Trial by Jury on all issues so triable.

Respectfully submitted,

*/s/Jay Paul Deratany*

_____

Jay Paul Deratany (IL6197097)
Roosevelt Allen III
Deratany & Kosner
221 N. LaSalle Street Suite 2200
Chicago, Illinois 60601
312-857-7285
708- 298-2329 (Fax)
Email:jpderatany@lawinjury.com


-and-


Russell Randazzo (0082221)
Randazzo Law, LLC
Local Co-Counsel for Plaintiffs
55 Public Square — Suite 2100
Cleveland, Ohio 44113
216-350-4434
216-274-9318 (Fax)
Email: russell@rrandazzolaw.com